Angelina MACH, Plaintiff,

v.

Frank ALLISON, Defendant-Third-Party Plaintiff-
Appellant,

v.

Kathleen MACH, Third-Party Defendant,

NBC-15, Christine Leonard, Benedek Broadcast-
ing and National Casualty Company, Third-Party
Defendants-Respondents.

Frank ALLISON, Plaintiff,

v.

NBC-15, Christine Leonard, Benedek Broadcast-
ing and ABC Insurance Company, Defendants.

Court of Appeals

*No. 02–0928. Submitted on briefs September 10, 2002.—Decided
December 5, 2002.*

2003 WI App 11

(Also reported in 656 N.W.2d 766.)

On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of

*John L. Cates, Paul A. Kinne,* and *Heath P. Straka* of *Gingras, Cates & Luebke, S.C.,* Madison.

On behalf of the third-party defendants-respondents, the cause was submitted on the brief of *Robert J. Dreps* of *LaFollette Godfrey & Kahn,* Madison.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. VERGERONT, P.J. This defamation action concerns a Channel 15 television news broadcast on a dog trainer, Frank Allison, and a dog placed with him for training that subsequently died. Allison appeals the trial court's orders dismissing his first amended complaint and third amended complaint on Channel 15's motions for summary judgment. He contends there are disputed factual issues on whether the alleged defamatory implication in the first amended complaint—that he was the dog's killer—was false, and on whether the additional defamatory implications alleged in the third amended complaint were reasonably implied by the broadcast. Therefore, he asserts, he is entitled to a trial on these issues.

¶ 2. We conclude the trial court correctly dismissed the first amended complaint because Channel 15 was entitled to judgment as a matter of law that the implication that Allison was the killer of the dog was not false. We also conclude the trial court erroneously exercised its discretion in allowing further amendment to the complaint after the motion for summary judgment was granted because the court did not apply the correct legal standard. In order to allow the trial court the opportunity to exercise its discretion applying the correct legal standard, we remand for that purpose. In the event the trial court on remand decides to deny

leave to amend the first amended complaint, after exercising its discretion based on the correct legal standard, that decision will terminate the action. However, in the event the trial court on remand decides to grant leave to amend, we take up the second issue raised by Allison: whether the trial court correctly granted summary judgment on the third amended complaint. We hold that the trial court was correct with respect to six of the newly alleged defamatory implications, because, we conclude, the broadcast did not fairly and reasonably convey those implications. However, we conclude the broadcast did fairly and reasonably convey the implication that Allison used beating or violence as a means of training the dog. Accordingly, if the trial court decides to allow amendment to the first amended complaint, we affirm in part summary judgment on the third amended complaint, reverse in part, and direct a trial on the alleged defamatory implication that Allison used beating or violence as a means of training the dog.

## BACKGROUND

¶ 3. The first amended complaint alleged the following.[1] Allison specializes in training aggressive and dangerous dogs that are considered untrainable, and Angelina Mach agreed to have him train her dog,

---

[1] Angelina Mach sued Allison for conversion based on the death of her dog and he counterclaimed for defamation. That case was consolidated with Allison's defamation action against Channel 15, its owner Benedek Broadcasting, Benedek's insurer, and Christine Leonard, who prepared the report. Mach ultimately abandoned the conversion claim, which was dismissed, and Allison was awarded a default judgment on the counterclaim, but never sought a hearing on damages. We are concerned on this appeal only with Allison's defamation action against the Channel 15 defendants.

Chance, because the dog was aggressive, out of control, and had bitten several people. Chance attacked Allison when he entered the dog's kennel to put it on a leash, and he "hit Chance with a stick in order to defend himself from serious bodily injury or even death and to exit the kennel." Mach took Chance home the next day, and Chance died within a few days. The autopsy report showed that Chance died from severe thoracic disease, a condition pre-existing the dog's stay with Allison. The complaint asserted that the news report "negligently and falsely portrayed and implied that [he] was [Chance's] killer . . .," and it listed seven specific statements, omissions, and visual images which allegedly conveyed this false portrayal and implication.

¶ 4. Channel 15 moved for summary judgment on the ground that Allison could not prove that the alleged defamatory implication—that he was the dog's killer—was false. In support of its motion, Channel 15 relied on the affidavit of Dr. Howard Steinberg who authored the autopsy report and averred that he held the opinions expressed in the report to a professional degree of probability. The report came to this conclusion: "The immediate cause of death is a result of severe thoracic disease. However, the traumatic injuries and the underlying congenital (most likely) heart problems most likely contributed to this dog's death." In response, Allison argued that even if the trauma in some way contributed to the dog's death, the news report created the inference that Allison "inappropriately killed Chance."[2]

---

[2] In opposition to the motion, Allison submitted two pages of the deposition of Dr. Steinberg, the author of the autopsy report. Channel 15, in its reply brief, objected to consideration of this deposition because it was taken without notice to Channel 15, before consolidation of the two actions. The trial

¶ 5. The trial court issued a written decision on June 28, 2000, granting Channel 15's motion to dismiss the first amended complaint. The court stated that Allison had the burden of presenting evidence from which a reasonable jury could find that the alleged statement or implication in the news report that he was responsible for Chance's death was false. The court concluded that Allison had not done this, because the only evidence—the autopsy report—showed that Allison had contributed to the dog's death.

¶ 6. On July 5, 2000, Allison moved for reconsideration, or, in the alternative, to amend the first amended complaint. Allison submitted with this motion an affidavit of counsel, which attached three letters from doctors of veterinary medicine that, Allison contended, showed there was a dispute over whether Allison had caused the dog's death.[3] Allison also argued that the trial court had construed the alleged defamatory implication too narrowly, and even if he could not prove the falsity of the implication that he killed the dog, he could prove he did not kill the dog without justification and did not perform the functions of a dog trainer in a reckless, dangerous, or unprofessional

court did not consider this deposition testimony in its decision. Allison does not mention Steinberg's deposition testimony in his main brief on appeal, and we therefore do not address it further.

Allison also submitted in opposition to the motion a letter from Douglas Thamm, DVM, and Katherine James, DVM, attached to counsel's affidavit. Allison did not refer to this letter in his brief in opposition to the motion; neither did Channel 15 in reply, nor the trial court in its decision. We address this letter later in our decision.

[3] Allison had previously submitted one of the letters. *See* footnote 2.

manner. The proposed second amended complaint added these two additional assertions of falsity.

¶ 7. Channel 15 opposed both requests. In objecting to an amendment to the first amended complaint, it argued that there was no precedent for allowing an amendment after a motion for summary judgment was granted, no new facts had come to Allison's attention, Allison had had nearly two years to decide what statements or implications in the news report he viewed as defamatory,[4] and it was unjust to permit him now to start over with different ones after losing on the summary judgment motion.

¶ 8. The trial court denied the motion for reconsideration, rejecting Allison's argument that the court should have considered negative implications from the broadcast that were not specifically pleaded. However, the court decided to grant the motion to amend. The court stated that it had the discretion to grant a motion to amend until and even after judgment if justice so requires, such motions were to be liberally granted unless the other party would be prejudiced, and Channel 15 was not prejudiced because it had notice from the pleadings, briefs, and depositions of the operative facts and allegations giving rise to the defamatory implications of the broadcast that were pleaded in the proposed amended second complaint.

¶ 9. Allison eventually filed a third amended complaint[5] that alleged that the broadcast had negligently and falsely portrayed and implied that: (1) he inten-

---

[4] It appears that Allison filed the first complaint against Channel 15 in September 1998.

[5] After the court granted Allison's motion to amend, he filed a third amended complaint that contained allegations that were not in the proposed second amended complaint. Channel 15

tionally killed the dog without provocation or justification; (2) he recklessly killed the dog without provocation or justification; (3) he intentionally caused serious bodily injury to the dog without provocation or justification; (4) he recklessly caused serious bodily injury to the dog without provocation or justification; (5) he intentionally caused serious bodily injury to the dog without being attacked by the dog; (6) he recklessly caused serious bodily injury to the dog without being attacked by the dog; and (7) his training method was to beat or use violence as a means of training this dog. For each of these alleged false portrayals and implications, the complaint listed a number of statements, omissions, and images that allegedly conveyed the false portrayal and implication.

¶ 10. Channel 15 moved for summary judgment, asserting that no reasonable jury could construe the news story to convey any of these defamatory implications. In opposition, Allison submitted his affidavit in which he averred the following: (1) the news report showed him training two dogs, neither of which were Chance; (2) he was training for protection work in which dogs are trained to bite only on command of the dog's master; (3) Chance did not receive that type of training, but instead was to receive obedience training, which is designed to be gentle and to help a dog gain trust in people; and (4) Chance attacked him while the dog was still under observation and while he was trying to gain the dog's trust by feeding him and speaking to him. Allison also submitted portions of his deposition, of the reporter's and of the editor's.

moved to dismiss the third amended complaint for that reason, but the court denied the motion.

¶ 11. The trial court granted Channel 15's motion. With respect to the first six implications, the court concluded the broadcast was not capable of conveying those implications because the reporter stated that Allison said the dog attacked him and other statements convey that Allison did nothing wrong. With respect to the seventh implication, the court concluded that the broadcast was not capable of conveying the meaning that Allison used beating or violence as a means of training Chance. The court reasoned that although the videotape showed Allison in protective clothing with a dog attacking him, it is clear that dog is not Chance, since Chance is dead, and the only specific reference to how Chance was trained was Allison's statement, "[i]n starting training I do recommend a 24 hour fast."

## DISCUSSION

*First Motion for Summary Judgment*

¶ 12. The elements of a defamatory communication are: (1) a false statement, (2) communicated by speech, conduct, or in writing to a person other than the person defamed, and (3) the communication is unprivileged and is defamatory, that is, tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534, 563 N.W.2d 472, 481 (1997).[6] The "statement" that is the subject of a defamation action need not be a direct affirmation,

---

[6] The court in *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 525, 534 n.9, 563 N.W.2d 472, 481 (1997), noted that more recent cases of this court had, without discussion, used a standard of four elements derived from RESTATEMENT (SECOND) OF

but may also be an implication. *Milkovich v. Loran Journal Co.*, 497 U.S. 1, 22 (1990).

■

¶ 13. The dispute on the first motion for summary judgment concerns the first element of a defamation action—falsity. In a defamation action brought by a private figure against a media defendant, the plaintiff has the burden of proving that the speech at issue is false; this requirement is imposed in order to avoid the chilling effect that would be "antithetical to the First Amendment's protection of true speech on matters of public concern." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986); *see also Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d at 543 n.18. Allison concedes that he has the burden of proving the falsity of the alleged defamatory implication.[7]

TORTS § (1997): a false and defamatory statement; an unprivileged publication to a third party; fault amounting to at least negligence on the part of the publisher; and either actionability regardless of special harm or the existence of special harm caused by the publication. *See, e.g., Erdmann v. SF Broad. of Green Bay, Inc.*, 229 Wis. 2d 156, 164, 599 N.W.2d 1 (Wis. App. 1999). However, the court in *Torgerson* stated that [f]or present purposes "the distinctions between the two sets of elements, if any, are unimportant." 210 Wis. 2d n.9 at 535. The same is true in this case.

[7] We do not understand Channel 15 to assert that Allison is a public figure; if he were, the First Amendment would require that he prove actual malice by Channel 15 and the other defendants in addition to the other elements of the common law claim. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 535–36, 563 N.W.2d 472, 481 (1997).

The trial court stated that Allison had to prove falsity by clear and convincing evidence, citing *Torgerson*, 210 Wis. 2d at 541. However, the court in *Torgerson* was referring to the

¶ 14. We review the grant or denial of summary judgment de novo, and we apply the same standard as does the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). A party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In evaluating whether a defendant is entitled to summary judgment, we examine the defendant's submissions to determine whether they establish a prima facie defense to the claim; if they do, we then determine whether the plaintiff's submissions in response create a genuine issue of material fact that defeats the motion for summary judgment and entitles the plaintiff to a trial. *Preloznik v. Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). "Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." WIS. STAT. § 802.08(3).

[6, 7]

¶ 15. The first step of the methodology is to analyze the complaint to determine whether it states a claim. *Preloznik,* 113 Wis. 2d at 116. In doing so in this case, we bear in mind that "in an action for libel or slander, the particular words complained of shall be set forth in the complaint." WIS. STAT. § 802.03(6). We conclude that the first amended complaint does meet this standard and does state a claim for relief. We confine our analysis in the succeeding steps of summary judg-

---

burden of proof of actual malice. *Id.* at 541. Channel 15 does not argue on appeal that this standard applies to Allison's burden of proof of falsity. Therefore, we assume in our analysis the ordinary burden of proof for civil cases—by the greater weight of the credible evidence. WIS JI—CIVIL 200.

ment methodology to the specific implication that is alleged to be false—that Allison was the dog's killer.[8]

¶ 16. The autopsy report submitted by Channel 15 contains an admissible expert opinion that "[T]he immediate cause of death is a result of severe thoracic disease. However, the traumatic injuries and the underlying congenital (most likely) heart problems most likely contributed to this dog's death." It is clear from

---

[8] Channel 15 suggests that courts are to view summary judgments differently and more favorably in a defamation case because of First Amendment concerns. However, the authorities Channel 15 cites for this proposition are cases addressing public figure defamation actions. *Bay View Packing Co. v. Taff,* 198 Wis. 2d 653, 672, 543 N.W.2d 522 (Ct. App. 1995); *Fadell v. Minneapolis Star Tribune Co.,* 425 F. Supp. 1075, 1085 (N.D. Ind. 1976), *aff'd,* 557 F.2d 107 (7th Cir. 1977), *cert. denied,* 434 U.S. 966. More recently, in a public figure defamation case that involved the issue of actual malice, the supreme court has examined various views on summary judgment procedure in defamation actions and concluded that

> because courts have a duty to review the record independently in public figure libel actions and this duty entails a 'constitutional responsibility that cannot be delegated to the trier of fact,' *Bose Corp. v. Consumers Union of U.S. Inc.,* 466 U.S. 485, 501 (1984), summary judgment is an important and favored method for adjudicating public figure defamation actions.

*Torgerson v. Journal/Sentinel, Inc.,* 210 Wis. 2d 525, 539–40, 563 N.W.2d 472, 481 (1997). As we have explained above, our review of the grant or denial of all summary judgments is de novo. Channel 15 has not provided any authority for applying a different standard in our review of the issues presented by the appeal of the two summary judgments in this case than that which we ordinarily apply, and we have discovered none. Accordingly, save for the defamation pleading requirements we have already mentioned, *see* WIS. STAT. § 802.03(6), we apply the same standards for summary judgment and for review of summary judgments that we apply in other types of actions.

the report that the traumatic injuries referred to are those caused by Allison. We conclude this submission establishes a prima facie defense that the statement or implication that Allison killed the dog was not false.

■

¶ 17. Since Allison has the burden of proving the falsity of the statement that he killed the dog, in order to defeat Channel 15's motion he had to present evidence that, it believed, would establish the falsity of the statement. *Transp. Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 292, 507 N.W.2d 136 (Ct. App. 1993). The submissions that make this showing, in Allison's view, are the three letters from veterinarians he submitted in support of his unsuccessful motion for reconsideration, only one of which had been filed with the court before it ruled on the first motion for summary judgment. (*See* footnotes 2 and 3.) However, we address all three together at this time, rather than deferring discussion of the two. None of the three meets the requirements of WIS. STAT. § 802.08(3). The letters themselves are not in affidavit form and, as unsworn statements, are not admissible at trial. *Holsen v. Heritage Mut. Ins. Co.*, 182 Wis. 2d 457, 466, 513 N.W.2d 690 (Ct. App. 1994), *vacated on other grounds,* 185 Wis. 2d 1, 517 N.W.2d 448 (1994). Counsel's sworn statement that they are true copies of letters from the signatories does not make the letters admissible at trial to prove the truth of their contents, because the facts and opinions in the letters are not based on counsel's personal knowledge. *See Hopper v. City of Madison*, 79 Wis. 2d 120, 130, 256 N.W.2d 139 (1977).

¶ 18. Since the autopsy report, properly incorporated into Dr. Steinberg's affidavit, is the only submission in proper form, the remaining question is whether that is sufficient to place in dispute the falsity of the

implication that Allison killed the dog. We agree with the trial court that it is not. Allison argues that, based on the autopsy report, a jury could decide that the cause of Chance's death was thoracic disease and not anything Allison did. We do not agree. With no other expert testimony on an issue that both parties agree requires expert testimony, a jury would have no basis for coming to any conclusion other than that offered by Dr. Steinberg on the cause of the dog's death. There is, therefore, no evidentiary basis on which a jury could conclude that the injuries caused by Allison did not contribute to the dog's death. Accordingly, we conclude the trial court properly granted Channel 15's first motion for summary judgment.

*Amendment after Grant of Summary Judgment Motion*

¶ 19. Channel 15 contends that we need not decide whether the trial court correctly granted its second motion for summary judgment because the court erroneously exercised its discretion in allowing an amendment to the first amended complaint after it granted summary judgment on that complaint. Since we may affirm a trial court on a different ground than that relied on by the trial court, *see Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 594–95, 530 N.W.2d 16 (Ct. App. 1995), this issue is properly before us.

¶ 20. WISCONSIN STAT. § 802.09(1) provides in part:

(1) [AMENDMENTS.] A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse

> party; and leave shall be freely given at any stage of the action when justice so requires.

The decision whether to grant a motion to amend a complaint lies within the trial court's discretion. *Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶ 12, 239 Wis. 2d 406, 415, 620 N.W.2d 463. We affirm a trial court's exercise of discretion if the court applied the correct legal standard to the facts of record in a reasonable manner. *See id.*

¶ 21. Channel 15 argues that the court applied an incorrect legal standard because it considered only whether the operative facts in the proposed amended complaint were the same as those already known to Channel 15, and not the timing of the motion to amend and Allison's reasons, if any, for not bringing the motion sooner. Moreover, Channel 15 contends, the manner in which the court analyzed the operative facts does not take into account particular characteristics of actions alleging defamation by implication.

¶ 22. Allison responds that the trial court here applied the proper standard, which is that trial courts are to freely grant leave to amend pleadings so as to present the entire controversy unless there is prejudice to the opposing party because of the lack of a timely opportunity to meet the issues created by the amendment. *See, e.g., Wipfli v. Martin*, 34 Wis. 2d 169, 174, 148 N.W.2d 674, 677 (1967); *Tri-State Home Improvement Co. v. Mansavage*, 77 Wis. 2d 648, 658, 253 N.W.2d 474 (1977). However, in those cases the amendment was sought just before or during trial, and therefore the analysis is not particularly helpful in this case.

¶ 23. The trial court relied on the statement in *Soczka v. Rechner*, 73 Wis. 2d 157, 162, 242 N.W.2d 910 (1976), that "it is within the trial court's discretion to

allow amendment of pleadings until and even after judgment." That language came from a predecessor to Wis. STAT. § 802.09(1), which provided: "The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding . . . ." Wis. STAT. § 269.44 (1973). Channel 15 does not suggest that the elimination of the phrase "before or after judgment," when the civil procedure statutes were renumbered and revised by S. CT. ORDER, 67 Wis. 2d 632 (eff. Jan. 1, 1976), indicates an intent to preclude allowing amendments after a motion for summary judgment has been granted; and we conclude it does not indicate that intent. The current language "at any stage of the action" is plainly broad enough to include one week after a motion for summary judgment is granted. In addition, the relevant Judicial Council Committee Notes indicate no change was intended.[9]

---

[9] When construing statutes, if the language is plain, we apply it to the facts at hand. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). Although we may not use legislative history to create an ambiguity in a statute, we may use it to reinforce a conclusion that the statute is indeed unambiguous. *Novak v. Madison Motel Assoc.*, 188 Wis. 2d 407, 416, 525 N.W.2d 123 (Ct. App. 1994). We apply these standards in construing rules of civil procedure adopted by the supreme court.

The first version of Wis. STAT. § 802.09(1) provided in part:

[Amended and supplemental pleadings.] (1) AMENDMENTS. A party may amend his pleading once as a matter of course at any time prior to the entry of the scheduling order provided in s. 802.10(1). Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

¶ 24. Thus the statement in *Soczka* that a trial court may grant a motion to amend, either before or after judgment, is still a correct statement of the law. However, the facts and reasoning in *Soczka* suggest that whether the amendment is before or after judgment does have a bearing on what justice requires. The court in *Soczka* upheld the trial court's denial of a motion to amend the complaint after verdict to conform to an agency theory. The court concluded that this was a proper exercise of discretion because the agency theory would raise a new factual issue requiring a new trial, and the plaintiff had made no claim of excusable neglect for failing to plead the agency theory before the close of evidence. *Id.* at 163. Because *Soczka* is an affirmance of a trial court's exercise of discretion,[10] and

S. CT. ORDER, 67 Wis. 2d 632 (eff. Jan. 1, 1976). The accompanying Judicial Council Committee Note states that this new section "generally corresponds with ss. 263.45 [allowing any pleading to be amended once as a matter of course within twenty days of service] and 269.44, except that the timing of amendments has been tied into the s. 802.10(1) scheduling order rather than the service of the original pleading as in s. 263.45." *Id.* at 634. "[A]t any stage of the action" was added by S. CT. ORDER, 82 Wis. 2d ix (eff. July 1, 1978), with the accompanying Judicial Council Committee Note explaining "[t]he subsection . . . clarifies that leave of the court may be given at any stage of the action for amendment of pleadings when justice requires." S. CT. ORDER, 82 Wis. 2d at xiii.

[10] The very nature of a discretionary decision means that in a given situation there may be more than one reasonable result. *See Ocanas v. State*, 70 Wis. 2d 179, 187–88, 233 N.W.2d 457 (1975) (discussing the exercise of discretion in sentencing). Therefore, an affirmance by an appellate court of a trial court's decision to deny a motion to amend a complaint does not necessarily mean that a decision to grant the motion in the same or similar circumstances is an erroneous exercise of

because the relevant factors after the close of evidence are not entirely the same as after the grant of a motion for summary judgment, we do not suggest that *Soczka* authoritatively defines the correct legal standard in this case. However, the case does illustrate two factors—timing of motion and reason for not bringing it sooner—that the supreme court has considered appropriate when the motion is brought after a verdict.

¶ 25. *Grothe*, 2000 WI App 240, is the only Wisconsin case brought to our attention that involves a motion to amend a complaint after a motion for summary judgment was granted.[11] There we held that even though there was no claim of prejudice by the defendants, the trial court properly exercised its discretion in denying the motion to amend because the plaintiff did not explain why an amendment was justified so late in the proceedings, and nearly two years after the filing. *Id.* at ¶ 13. Again, while this case shows that timing of the motion and the reason for not bringing it sooner are proper factors for the court to consider, it does not necessarily require the conclusion that the trial court here erroneously exercised its discretion by not considering these factors.

¶ 26. Since it appears that no Wisconsin case directly addresses the standard trial courts are to apply when considering motions under WIS. STAT. § 802.09(1) after a motion for summary judgment has been granted, we turn to federal cases applying the substan-

---

discretion; this is particularly true where the relevant circumstances differ in any significant way.

[11] *Grothe v. Valley Coating, Inc.*, 2000 WI App 240, 239 Wis. 2d 406, 620 N.W.2d 463, was decided after the trial court's decision in this case.

tially similar federal rule.[12] Federal courts require a stronger showing by the party seeking leave to amend after summary judgment. *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 470 (5th Cir 1967); *Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1368 (7th Cir. 1995); *Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993), *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). *See also Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1999) (requiring a strong showing but concluding that leave to amend nevertheless should have been granted because recent legislation made the trial court's ruling on summary judgment incorrect). "It is well established that the presumption that leave to amend shall be freely given pursuant to Rule 15(a) disappears after the entry of judgment. A party seeking amendment at that stage of the proceedings must provide the district court with a good reason to grant its motion." *Illinois Conference of Teamsters*, 71 F.3d at 1368. Although one policy of the federal rule is to allow for liberal amendment to facilitate determination of claims on the merits, *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981), the burden shifts to the moving party

> after the trial court has disposed of the case on the merits as in the case of summary judgment or judgment after a full trial. Then the concerns of finality in litigation become more compelling, and the litigant has had the benefit of a day in court, in some fashion, on the merits of his claim.

---

[12] FEDERAL R. CIV. P. 15(a) provides in part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

*Id.* at 598 n.2. As one court explained:

> Much of the value of summary judgment procedure in the cases for which it is appropriate - and we have held this to be such a case - would be dissipated if a party were free to rely on one theory in an attempt to defect a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*Freeman*, 381 F.2d at 470.

¶ 27. We conclude that the reasoning of these federal courts is sound. Accordingly, we hold that when a motion to amend a complaint is filed after a motion for summary judgment has been granted, there is no presumption in favor of allowing the amendment. Rather, the party seeking leave to amend must present a reason for granting the motion that is sufficient, when considered by the trial court in the sound exercise of its discretion, to overcome the value of the finality of judgment. The reasons why the party has not acted sooner, the length of time since the filing of the original complaint, the number and nature of prior amendments, and the nature of the proposed amendment are all relevant considerations, as is the effect on the defendant. However, the absence of specific prejudice to the defendant is not a sufficient reason, in itself, for allowing amendment, because that does not give appropriate weight to the value of the finality of judgment. Because the trial court did not apply the standard and consider the factors relevant to an amendment after a motion for summary judgment has been granted, we conclude it erroneously exercised its discretion.

¶ 28. We next address Channel 15's objection to the trial court's analysis of the operative facts in this case, which formed the basis for its conclusion that Channel 15 was not prejudiced.[13] The trial court relied on *Carl v. Spickler Enterprises Ltd.*, 165 Wis. 2d 611, 623, 478 N.W.2d 48 (Ct. App. 1991), for this formulation of prejudice: "whether the party opposing amendment has been given such notice of the operative facts which form the basis for the claim so as to enable him to prepare a defense or response." We agree with Channel 15 that when a trial court uses this formulation to determine if there is prejudice to a defendant in allowing an amendment to a complaint in a defamation action, it must take into account the specific pleading requirement applicable in such actions. *See* Wis. Stat. § 802.03(6). A defendant in a defamation action is entitled to notice of the specific statements or implications that are alleged to be defamatory. If "operative facts" are defined broadly as the entire broadcast or publication containing those statements or implications, then the defendant will always have had notice of that and will never be considered prejudiced by a proposed amendment. A proper analysis must focus on what specific statements or implications the proposed

---

[13] We emphasize that, depending on the facts of a particular case, it may not be necessary for a trial court to analyze prejudice to a defendant when considering a motion under Wis. Stat. § 802.09(1) brought after a motion for summary judgment has been granted. If the plaintiff does not have a sufficient reason for not seeking an amendment sooner, the trial court may properly deny the motion without considering prejudice to the defendant. However, because Channel 15 has challenged the trial court's analysis of prejudice in this case, and because we do not know if prejudice will be a relevant factor on remand, we address Channel 15's argument.

amendment seeks to add, and whether they raise new factual issues. For example, the factual issues involved in the alleged defamatory implication that Allison was the dog's killer are not necessarily the same as those involved in the alleged defamatory implication that Allison's training method was to beat or use violence as a means of training the dog. As we understand the trial court's decision, it did not analyze each proposed new allegation of defamatory implication to determine whether Channel 15 had had notice of the operative facts for each. This is an additional basis on which we conclude the trial court erroneously exercised its discretion in granting the motion.

¶ 29. Because we may not exercise discretion for the trial court, we must remand for the trial court to exercise its discretion employing the correct legal standard. If the trial court on remand decides to deny Allison's motion to amend its first amended complaint, that will terminate the action, since we have affirmed the court's order granting summary judgment on that complaint. However, if the court decides to grant the motion to amend, the correctness of its decision dismissing the third amended complaint remains an issue, and we therefore address it in the next section.

*Second Motion for Summary Judgment*

¶ 30. Allison contends the trial court erred in concluding that the broadcast did not convey the seven defamatory implications he added in the third amended complaint.[14]

---

[14] Channel 15 did not contend in the trial court that the seven newly alleged implications were not defamatory, and in its brief on appeal Channel 15 concedes they are defamatory.

¶ 31. The court decides, as a matter of law, whether an alleged defamatory implication is fairly and reasonably conveyed by the words and pictures of the publication or broadcast. *See Puhr v. Press Publ'g Co.*, 249 Wis. 456, 460, 25 N.W.2d 62 (1946). If the court decides it is not, the defendant is entitled to summary judgment. *Id.* at 461–62. If the court decides the alleged defamatory implication is fairly and reasonably conveyed but there is also a nondefamatory implication, it is the jury's role to decide which the publication or broadcast implies. *See Liberty Mut. Fire Ins. v. O'Keefe & O'Flaherty, Ltd.*, 205 Wis. 2d 524, 527, 556 N.W.2d 133 (Ct. App. 1996). When a television broadcast is at issue, we consider both the audio and video portions and their relation to each other, *see Giwosky v. Journal Co.*, 71 Wis. 2d 1, 6–7, 237 N.W.2d 36 (1976), as well as the juxtaposition of the various audio and video segments. *See* RODNEY SMOLLA, LAW OF DEFAMATION § 4:32, pp. 4–50 to 4–51 (2d ed.). In addition, extrapolating from cases that are concerned with defamation by implication in the print media, we are instructed that the "gist of the matter" is the "natural and reasonable import" of the words and images on the viewer, *Woods v. Sentinel–News Co.*,216 Wis. 627, 629 (1935), and we consider the broadcast as a whole, "not in detached fragments." *Id.* at 630.[15]

---

[15] Channel 15 appears to suggest that a stricter test is to be used by courts because of First Amendment concerns. However, the case it quotes from, *Woods v. Evansville Press Co.*, 791 F.2d 480, 487–88 (7th Cir. 1986), is addressing the actual malice requirement in a defamation action brought by a public figure. In the absence of any authority supporting the proposition that

¶ 32. Applying these standards to the first six alleged defamatory implications, we agree with the trial court that the broadcast does not fairly and reasonably convey those meanings—that Allison either intentionally or recklessly killed or seriously injured the dog without provocation or justification or without being attacked by the dog.

¶ 33. The only statements directly addressing the situation in which Allison caused injuries to the dog or his mental state at the time are the statement by the reporter, "[h]alfway into the training period, Allison says the dog attacked him," and Allison's statement "[a] dog openly attacks and you can't get him off by talking to him, do anything it takes to get him off and don't regard his safety."[16] The only reasonable meaning of these statements is that Allison caused injuries to the dog while defending himself in an attack from the dog. None of the video images—Chance lying dead or injured, Chance playing with Mach's family, Mach speaking, Allison with two other dogs, Allison speaking, Mach describing Chance's injuries, another trainer being in-

we are to employ a stricter test because of First Amendment concerns, we employ the standard as we have articulated it in the accompanying text.

Channel 15 is correct that, in deciding whether the broadcast conveys the alleged defamatory implications, we do not consider Allison's affidavit, described in ¶ 10, because that goes to the truth or falsity of the implications, an issue not raised by Channel 15 in its motion for summary judgment on the third amended complaint.

[16] There are some discrepancies between the statements as shown on the prompter's script and the actual statements on the tape. We quote the latter.

terviewed and shown speaking gently to a dog, and a member of Mach's family speaking—conveys a different implication. Finally, we do not agree with Allison that the following statement implies that there are grounds for bringing criminal charges against him because of Chance's death: "No criminal· charges have been brought against Frank Allison. The district attorney's office says there's just not enough evidence to support the charges. Allison maintains he did nothing wrong." The statement itself says there is not enough evidence, and nothing in the words or images preceding or following this statement suggests there is.

¶ 34. However, we come to a different conclusion than the trial court with respect to the seventh alleged defamatory implication that Allison's "training method was to beat or use violence as a means of training this dog." To explain our conclusion, we describe the broadcast in more detail.

¶ 35. There are two video sequences showing Allison with a dog other than Chance. In the first, Allison is shown in protective clothing with the dog's mouth around one arm; Allison is holding a stick in his other hand. Just before this video sequence is shown, the viewer hears Mach say, "[w]e took Chance there [to Allison]. [H]e promised us we'd have a social dog"; then the voice of the reporter, "[b]ut in doing so the Mach's made one big mistake." Then Mach says, "I didn't know anything about him." During this video sequence the reporter says: "Training techniques differ from person to person and the Machs never checked Allison's style before handing Chance over." Directly following this video sequence there is another in which a man, not Allison, has a different dog on a leash and the dog is repeatedly leaping toward Allison, who, again in protec-

714

tive clothing, is inciting the dog to leap at him. During this sequence, we hear Allison's voice stating: "[i]n starting training especially with a problem dog I do openly recommend a 24 hour fast"; then the reporter states: "[h]alfway into the training period, Allison says the dog attacked him." This is followed by Allison's statement, which we have quoted in paragraph 33, beginning with "A dog openly attacks . . . ." Besides this statement, there is no other explanation of the circumstances of Chance's attack on Allison, and there is no explanation of the purpose of Allison's actions in the sequences with the two other dogs.

¶ 36. The trial court reasoned that no reasonable viewer could conclude that Allison used the methods shown with the two other dogs on Chance because Chance was not the dog in those pictures and the only statement regarding Allison's training style concerned the twenty-four-hour fast. We disagree with this analysis. Statements made during both the video sequences showing Allison with the two other dogs relate specifically to Chance, as does Mach's statement just before the first sequence and Allison's statement directly following the second sequence. There is no statement or visual image that directly or implicitly conveys that Allison did not use with Chance the training methods depicted in the video sequences with the other two dogs. We therefore conclude that the broadcast fairly and reasonably conveys that Allison did use with Chance the methods depicted in the video sequences with the two other dogs.

¶ 37. We also conclude that the broadcast fairly and reasonably conveys that the training method Allison is using with the two dogs—and, by reasonable implication, used with Chance—involves beating the dog or violence. A reasonable viewer could understand

715

from the video sequences with the other two dogs that as part of his training method, Allison provokes dogs to attack him. Although neither sequence shows Allison beating the dogs, in the first he is holding a stick, which at one point he raises, reasonably suggesting that he might strike the dog. It is not clear whether Allison has the stick in order to protect himself if the dog becomes too dangerous in its attack, or whether he uses the stick to incite the dog to attack him; either, we conclude, is a reasonable implication.

¶ 38. Channel 15 argues that the defamatory implication that Allison used beating or violence in training Chance necessarily assumes that Chance never attacked him, but his own statement conveys Chance did attack him. According to Channel 15, "both cannot be true—Allison either hit the dog as a training method or he hit it to protect himself from attack." We disagree. A reasonable viewer could accept Allison's explanation that he inflicted the injuries on Chance in response to being attacked by Chance and not being able to get the dog off him, but could also conclude that Allison did use a stick to beat Chance as a training method, because that is a reasonable implication of the first video sequence with another dog. Moreover, because a reasonable viewer could understand that Allison used on Chance the methods depicted with the two other dogs, the broadcast as a whole could imply to a reasonable viewer that Allison's training method of provoking a dog was the reason Chance attacked him, causing Allison to use force against the dog in order to defend himself.

¶ 39. We acknowledge that Channel 15 presents a reasonable view of the broadcast that does not imply that Allison used beating or violence as a training method with Chance. However, we are convinced that is

not the only reasonable view, and that the broadcast is fairly and reasonably capable of conveying the defamatory implication Allison has alleged. Accordingly, if the trial court on remand grants Allison leave to file the third amended complaint, he is entitled to a trial on the issue of whether the broadcast conveys the implication that he used beating or violence as a training method with Chance.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.