PER CURIAM.
¶1 This appeal involves securities fraud, racketeering, and intentional misrepresentation claims brought against multiple defendants by Scott Brauer, Adam Kilgas, Duane McVane, Matt Vandehey, and Paul Weyers (collectively, "the investors"). The circuit court dismissed these claims on summary judgment. The investors argue that the court erred by: (1) granting summary judgment dismissing all of the investors' securities fraud claims as time-barred by the applicable statute of limitations; and (2) denying the investors' post-summary judgment motion for leave to file a second amended complaint in an attempt to cure deficiencies identified by the court in the racketeering and intentional misrepresentation claims made in the first amended complaint.
¶2 We conclude that the circuit court erroneously granted summary judgment dismissing the securities fraud claims of most of the investors because, based on the record developed to date, there are competing reasonable inferences from the undisputed facts as to whether those claims are barred by the applicable 2-year limitation period. However, investor McVane's situation is different from that of the other investors. As to McVane, we affirm dismissal of his claims based on McVane's implicit concession in his reply brief that his securities fraud claims are barred by the applicable 5-year limitation period. Finally, we affirm the court's denial of the investors' motion for leave to amend the dismissed racketeering and intentional misrepresentation claims, because the investors fail to address, in their reply brief, the counterargument raised by the defendants in their response brief. Accordingly, we affirm in part, reverse in part, and remand to the circuit court for further proceedings.
BACKGROUND
¶3 On November 21, 2014, the investors filed an initial complaint alleging securities fraud and other claims against Veripure, LLC, Badger Sheet Metal Works of Green Bay, Inc., and Gregory DeCaster.
¶4 On August 20, 2015, the investors filed a first amended complaint, which added as defendants the Greg A. DeCaster and Judith A. DeCaster Revocable Trust, GADJAD Properties LLC, Richard Chernick, Badger Capital Investments, LLC, and David Conard. We will refer to the defendants added in the first amended complaint, who are the respondents in this appeal, as "the added defendants." We will refer to all of the defendants named in both the initial and the first amended complaints as "all defendants."
¶5 The investors' claims against all defendants arise out of a complex network of relationships and transactions relating to the investors' investments in Veripure, LLC, much of which is disputed. The following facts, which are undisputed for purposes of summary judgment, suffice to provide context for the analysis below.
¶6 Each of the investors began working for Badger Sheet Metal Works of Green Bay, Inc., in 2008. In 2009 and 2010, Badger Sheet Metal experienced financial difficulties that prompted a series of financial transactions among several of the defendants, which were directed at enabling Badger Sheet Metal to pay its liabilities.
¶7 Meanwhile, in and before May 2010, Gregory DeCaster, the Chief Executive Officer of both Badger Sheet Metal and Veripure, solicited the investors to invest money in Veripure, whose founders, officers, and members included several of the defendants. In making these solicitations, DeCaster told the investors that Veripure was a "great investment" and that he expected them to make "ten times" whatever money they invested. DeCaster also told the investors that Veripure would use the investments for product development and sales. Between July 2010 and April 2011, each of the investors made investments in Veripure, comprised of transfers of their 401(k) retirement savings from previous employers into individual retirement accounts at Baylake Bank.
¶8 In their initial 2014 complaint, the investors alleged that their investments in Veripure had become "worthless" by the time the complaint was filed, and that their investments had been improperly used to pay liabilities incurred by or on behalf of Badger Sheet Metal. Pertinent here, the investors alleged that both DeCaster and Veripure had committed securities fraud in violation of WIS. STAT. §§ 551.501(2) and 551.509 (2017-18)[1] by misrepresenting to the investors the value of the Veripure membership units they received for their investments and the intended uses to which the investments would be put. The investors also alleged that Veripure, Badger Sheet Metal, and DeCaster had violated WIS. STAT. § 946.83 by engaging in "a pattern of racketeering activity" involving securities fraud, and that Veripure and DeCaster had intentionally misrepresented the prospects of, and the intended uses of, the investors' investments.
¶9 In their first amended 2015 complaint, the investors re-alleged the securities fraud, racketeering, and intentional misrepresentation claims against all defendants. The investors also added factual allegations in support of the securities fraud claims, including the allegation that certain of the defendants had failed to disclose to the investors material information concerning Veripure's finances.
¶10 All defendants moved for summary judgment. The circuit court ultimately entered summary judgment dismissing the securities fraud claims against the added defendants and the racketeering and intentional misrepresentation claims against all defendants. The court ruled that the securities fraud claims against the added defendants are time-barred and that the first amended complaint did not adequately plead allegations supporting the racketeering and intentional misrepresentation claims against all defendants.
¶11 Following the summary judgment rulings, the investors moved for leave to file a second amended complaint in an attempt to cure the deficiencies in their racketeering and intentional misrepresentation claims identified by the circuit court in its summary judgment ruling dismissing those claims. The court denied the motion. This appeal follows.[2]
DISCUSSION
¶12 As stated, the investors challenge the circuit court's dismissal on summary judgment of their securities fraud claims against the added defendants, and also the court's denial of the investors' motion for leave to file a second amended complaint in an attempt to save the dismissed racketeering and intentional misrepresentation claims against all defendants. We address each topic in turn.
I. Whether the Securities Fraud Claims Are Time-Barred
¶13 As to the securities fraud claims of all of the investors, the added defendants argue that these claims are time-barred under the 2-year limitation period set forth in the statute of limitations applicable to securities fraud, WIS. STAT. § 551.509(10)(b). As to one investor, McVane, the added defendants additionally argue that his claims are time-barred under the 5-year limitation period in that same subsection. We conclude that there is a material factual dispute regarding whether all claims are barred by the 2-year period. As to McVane, we affirm the dismissal of his claims because he fails to respond to the added defendants' argument on the topic.
¶14 In the following subsections, we:
• Summarize summary judgment law;
• Set forth the applicable law relating to the securities fraud statute of limitations;
• Apply the law set forth in the first two subsections and conclude that the securities fraud claims are not time-barred by the 2-year limitation period in WIS. STAT. § 551.509(10)(b), because there are competing reasonable inferences as to when the investors discovered the facts constituting the alleged fraud; and
• Accept the implicit concession of McVane that the added defendants are correct in arguing that investor McVane's securities fraud claims are time-barred by the 5-year limitation period in WIS. STAT. § 551.509(10)(b).
A. Applicable Summary Judgment Standards
¶15 We review the circuit court's entry of summary judgment de novo, applying the same methodology as the circuit court. Cole v. Hubanks , 2004 WI 74, ¶5, 272 Wis. 2d 539, 681 N.W.2d 147. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2). In summary judgment, a court " 'decides whether there is a genuine issue of material fact; the court does not decide the fact.' " Midwest Neurosciences Assocs. v. Great Lakes Neurosurgical Assocs. , 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767 (quoted source omitted). Here, the added defendants are the moving party for summary judgment based on the statute of limitations and, therefore, "bear[ ] the burden of establishing the absence of a genuine, that is, disputed, issue of material fact." Id.
¶16 We review summary judgment materials "in the light most favorable to the non-moving party." Id. Also, "if more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." Schmidt v. Northern States Power Co. , 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294. Summary judgment must not be granted if "a reasonable jury could return a verdict in favor of the nonmoving party." Id. , ¶24. " 'Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against' " the party moving for summary judgment. Id. (quoted source omitted).
B. Applicable Law Relating to Securities Fraud Statute of Limitations
¶17 There is no dispute that the relevant time limits for bringing the securities fraud claims at issue here are found in WIS. STAT. § 551.509(10)(b). That statute provides, in pertinent part, that "[a] person may not obtain relief [for a securities fraud violation] unless the action is instituted within the earlier of 2 years after discovery of the facts constituting the violation or 5 years after the violation." Sec. 551.509(10)(b). Under this framework, the 5-year bar starts running when a violation occurs, but the time limit for bringing an action is shortened to 2 years if an investor "discover[s] ... facts constituting the violation," and this 2-year period starts running from the time of discovery.
¶18 The triggering language for the shorter 2-year time limit in WIS. STAT. § 551.509(10)(b), the "discovery of the facts constituting the violation," has been interpreted to mean that the time limit for bringing suit starts when "the defrauded party possesses sufficient knowledge to make a reasonable person aware of the need for diligent investigation." See Gygi v. Guest , 117 Wis. 2d 464, 467, 344 N.W.2d 214 (Ct. App. 1984).[3] The same triggering language appears in a comparable federal securities fraud statute, and the United States Supreme Court has adopted the label "inquiry notice" for what appears to be the same notice-of-facts standard we adopted in Gygi . See Merck & Co. v. Reynolds , 559 U.S. 633, 638, 651 (2010) (" 'inquiry notice' refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further"). Accordingly, we refer to the Gygi interpretation of the triggering test using the same term, the inquiry notice standard.[4]
¶19 The parties do not dispute that both the 2-year and 5-year limitation periods in WIS. STAT. § 551.509(10)(b) should be calculated from the date that the first amended complaint was filed, August 20, 2015.
C. Application of the Inquiry Notice Standard
¶20 The added defendants argue that they are entitled to summary judgment dismissing the securities fraud claims against them because the undisputed evidence permits the sole reasonable inference that, more than two years before the investors filed the amended complaint, the investors "possess[ed] sufficient knowledge to make a reasonable person aware of the need for diligent investigation" of the alleged fraud. See Gygi , 117 Wis. 2d at 467. We disagree. We review the evidence and arguments of the added defendants and explain why competing reasonable inferences can be drawn from that evidence as to whether the investors, more than two years before they filed their securities fraud claims in the first amended complaint, possessed knowledge that would make a reasonable person aware of the need for diligent investigation of the alleged fraud.
¶21 As stated, the first amended complaint alleges that the added defendants committed securities fraud in at least two distinct ways. First, the added defendants allegedly mispresented that the investors would "make ten times their money" and that the investors' money would be used for Veripure product development and sales. Second, the added defendants allegedly failed to disclose material information concerning Veripure's finances. As stated, the first amended complaint containing these securities fraud claims against the added defendants was filed on August 20, 2015. Thus, the critical date under the "discovery of the facts constituting the violation" rule is two years earlier; therefore, if the investors had not discovered the facts constituting the violation by August 20, 2013, their claims were timely filed.
¶22 The added defendants appear to intend to argue that "inquiry notice was triggered" before August 20, 2013, because the investors were put on notice that the alleged misrepresentations might merit investigation as potentially fraudulent by either or both of the following events: (1) before May 2013, the investors received IRS Schedule K-1 Forms, purporting to reflect the annual status of each investor's capital account in Veripure for the years 2010 and 2011; and (2) in May 2013, the investors received IRS Forms 5498, purporting to reflect the fair market value of each investor's retirement account with Baylake Bank in 2012. However, the first argument, if intended, is undeveloped, and the second lacks merit as a dispositive argument for summary judgment. We address each set of documents in turn.
1. IRS Schedule K-1 Forms
¶23 In the circuit court, the added defendants argued that the IRS Schedule K-1 Forms filed by Veripure for the years 2010 and 2011 and received by the investors before May 2013 satisfied the inquiry notice standard. It is not clear from their briefing whether the added defendants mean to renew this argument on appeal, but in any case on our de novo review of the record as it now stands, we see no reason to conclude that the K-1 Forms provide a basis to find that the inquiry notice standard was met.
¶24 Each K-1 Form on its face purports to show the amount of each investor's "capital account" in Veripure and any changes to that account, including any gains or losses, over the course of the reporting year. More specifically, each K-1 Form shows a loss of between two and five percent for each investor's capital account in 2010 and again in 2011. In the circuit court, the investors, relying on an affidavit by an accountant, disputed both the nature of the information contained in the forms and the significance, if any, of the losses reported, with respect to whether those losses put the investors on notice to investigate possible fraud. It is not evident from the face of these forms what they signified, and the added defendants do not on appeal shed additional light. At a bare minimum, competing reasonable inferences can be drawn from the evidence developed to this point concerning whether the investors should have suspected potential fraud based on the K-1 Forms, and therefore summary judgment based on investors' receipts of those forms is inappropriate. See Schmidt , 305 Wis. 2d 538, ¶47 ("if more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate"). Accordingly, we do not address this topic further. See Clean Wis., Inc. v. PSC , 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").
2. IRS Forms 5498
¶25 The added defendants come closer to presenting a developed argument with respect to the IRS Forms 5498. The added defendants contend that the IRS Forms 5498 for 2012, which each investor received not later than May 31, 2013, satisfied the inquiry notice standard. As we explain, this argument fails because it does not account for the competing inferences that may be drawn from the information in the forms and the undisputed facts of the record developed to date.
¶26 Before addressing the added defendants' argument, we first describe the IRS Forms 5498. As referenced above, the investors' Veripure investments were held in retirement accounts with Baylake Bank. Baylake Bank submitted to the Internal Revenue Service IRS Forms 5498, on which it reported "IRA Contribution Information," including the "fair market value of account" for each IRA "participant," namely the respective investor. Baylake Bank submitted the IRS Forms 5498 for 2010, 2011, and 2012 for Brauer, McVane, Vandehey, and Weyers, and for 2011 and 2012 for Kilgas. As reported in each form, the "fair market value of account" for each investor increased slightly or did not change in 2010 and 2011, but decreased by approximately 80 percent in 2012.
¶27 The added defendants argue that the investors' receipts of the forms covering 2012 put them on notice of the need to investigate possible fraud because it contradicted the rosy forecast presented by DeCaster at the time of the original investments. In effect, the added defendants' argument rests wholly on two facts: (1) that DeCaster told the investors before they invested that they would make "ten times" their money; and (2) that the investors learned, two to three years later, that during the second or third year of their investments they had lost 80 percent of the value of their retirement accounts that held their Veripure investments. According to the added defendants, the only reasonable inference to be drawn from these two facts is that reasonable persons in the positions of the investors would have been aware of the need for diligent investigation upon learning of the 80 percent decline in 2012, because it signaled that DeCaster's representation may have been fraudulent. This, the added defendants assert, sufficed to satisfy the inquiry notice standard and, therefore, triggered the running of the 2-year limitation period.
¶28 There are at least two problems with the added defendants' argument. First, they point to nothing in the record that would inform a fact finder what the investors could have or must have deduced about the source or the import of the information reported by Baylake Bank in the IRS Forms 5498. For example, the added defendants do not point to evidence that would tell a fact finder what the investors were supposed to understand about how the bank determined the "fair market value" of each investor's retirement account, or whether that value moved in lockstep, or instead did not closely correspond, with the performance of the Veripure investments. Thus, the added defendants fail to identify clear evidence in the record that the 80 percent decline reported on the IRS Forms 5498 necessarily reflected a significant enough decline in the Veripure investments "to make a reasonable person aware of the need for diligent investigation" of possible fraud. And, even if the decline in value did suffice to give notice of the need to investigate with respect to the representation that the investors would make ten times their money, the added defendants do not explain why the decline in value would suffice to give notice of the need to investigate with respect to the representation that the money would be used only for Veripure or to suspect that material financial information had been withheld.
¶29 Second, the inference drawn by the added defendants is not the only reasonable inference that can be drawn from the undisputed facts. Construing the undisputed facts in the investors' favor, there is another reasonable inference to the effect that the investors might reasonably have believed that, even if the decline reported on the IRS Forms 5498 signaled that the value of the Veripure investments had in fact suffered a significant decrease, that decrease could be attributed to the vicissitudes of the market, to the risks inherent in any business investment, or to the risks particularly borne by a venture based on the development and marketing of a product that involved new technology.
¶30 Elaborating on this last idea, the alternative inference is supported by the undisputed fact that DeCaster told the investors that their money would be used for development and sales of a product that Veripure's employees had not produced or marketed before, involving new technology, which implies heightened risk of fluctuations in company value while the product is brought to market. The record includes references to the planned development and marketing of a newly invented water purification system that was represented to be "the most advanced [technology] available" and "a breakthrough."
¶31 Because competing reasonable inferences can be drawn from the evidence developed to this point concerning whether the investors should have suspected potential fraud upon receipt of the IRS Forms 5498, summary judgment based on the investors' receipts of those forms is inappropriate. See Schmidt , 305 Wis. 2d 538, ¶47.[5]
D. McVane's Securities Fraud Claims
¶32 The added defendants argue that McVane, unlike the other investors, did not file his claims within the 5-year limitation period in WIS. STAT. § 551.509(10)(b). Thus, even though there may be a factual dispute as to whether the 2-year limitation period was triggered as to McVane, this dispute does not help McVane if, as argued by the added defendants, he did not even file his suit within the longer 5-year period.
¶33 It is undisputed that McVane made his investment in Veripure on July 20, 2010-more than five years prior to the filing of the first amended complaint. The added defendants argue that this investment date triggered the running of the 5-year time limit because, according to the Seventh Circuit, "[i]n securities fraud cases, the federal rule is that the plaintiff's cause of action accrues 'on the date the sale of the instrument is completed.' " McCool v. Strata Oil Co. , 972 F.2d 1452, 1460 (7th Cir. 1992) (quoted source omitted).
¶34 McVane does not address the added defendants' argument in the reply brief, and it is therefore deemed admitted. See Insurance Co. of N. Am. v. DEC Int'l, Inc. , 220 Wis. 2d 840, 849, 586 N.W.2d 691 (Ct. App. 1998) ("A proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted."). Accordingly, we affirm the entry of summary judgment dismissing McVane's securities fraud claims.
II. Denial of the Motion to Amend the First Amended Complaint
¶35 The investors argue that, if we reverse summary judgment against the added defendants, thereby reviving the securities fraud claims, the circuit court should be directed to reconsider its denial of the investors' post-summary judgment motion for leave to file a second amended complaint. Specifically, the investors hope to cure deficiencies identified by the court with respect to their dismissed racketeering and intentional misrepresentation claims and, on remand, ask that we direct the court to determine whether to allow this amendment using a more permissive standard than the court applied when it denied the motion. We reject this argument on the ground that the investors implicitly concede that this argument is not supported by the case law that they cite.
¶36 We now briefly explain the context for the investors' argument. The circuit court analyzed the investors' motion under the higher standard that applies to motions for leave to amend that are filed after summary judgment has been granted. See Mach v. Allison , 2003 WI App 11, ¶27, 259 Wis. 2d 686, 656 N.W.2d 766 (2002) (a party seeking leave to amend after summary judgment has been granted "must present a reason for granting the motion that is sufficient ... to overcome the value of the finality of the judgment."). The decision whether to allow a plaintiff to amend a complaint under this standard is discretionary. Id. , ¶20.
¶37 The investors do not contend that the circuit court here misapplied the Mach standard. Instead, they argue that, if we reverse the court's entry of summary judgment on their securities fraud claims, we should remand to the court with instructions to re-adjudicate the motion for leave to amend the racketeering and intentional misrepresentation claims under the more permissive standard that applies to motions to amend that occur prior to summary judgment. See WIS. STAT. § 802.09(1) (leave to amend "shall be freely given at any stage of the action when justice so requires"). In support, the investors rely on Aon Risk Servs., Inc. v. Liebenstein , 2006 WI App 4, 289 Wis. 2d 127, 710 N.W.2d 175, abrogated on other grounds by Burbank Grease Servs., LLC v. Sokolowski , 2006 WI 103, 294 Wis. 2d 274, 717 N.W.2d 781.
¶38 In Aon , this court reversed the circuit court's grant of summary judgment dismissing the plaintiffs' claims and held that the liberal standard for amending pleadings applied to the plaintiffs' motion for leave to amend as to the claims that were erroneously dismissed. Id. , ¶39. The investors ask that we follow Aon and direct the circuit court to apply the liberal standard to their motion for leave to amend as to claims that were previously dismissed on summary judgment and whose dismissal is unchallenged on appeal.
¶39 In their response brief, the added defendants argue that the problem with the investors' argument is that the claims at issue in Aon were not in the same posture as the claims that the investors here seek to amend. In Aon , we reversed summary judgment and, as to the claims affected by that reversal, we concluded that the statutory " 'leave shall be freely given' command comes back into play." Id. , ¶39. Here, in contrast, the claims at issue with respect to the investors' motion for leave to amend remain dismissed on summary judgment and, therefore, according to the added defendants, the post-summary judgment standard for permitting an amendment applies.
¶40 The added defendants take the position that "[n]owhere did the Aon court indicate that reversal of summary judgment on one claim dictates that a party must be allowed to amend [its] pleadings as to other dismissed claims." The investors do not address this argument in their reply brief; therefore, we deem them to concede that the added defendants are correct. See Fischer v. Wisconsin Patients Comp. Fund , 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 ("An argument asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted."). Accordingly, we affirm the circuit court's denial of the investors' motion for leave to amend.
CONCLUSION
¶41 For these reasons, we (1) reverse the circuit court's entry of summary judgment dismissing the investors' securities fraud claims as barred by the 2-year limitation period in WIS. STAT. § 551.509(10)(b) ; (2) affirm the court's entry of summary judgment dismissing McVane's securities fraud claims as barred by the 5-year limitation period in WIS. STAT. § 551.509(10)(b) ; (3) affirm the court's denial of the investors' motion for leave to amend their racketeering and intentional misrepresentation claims; and (4) remand to the circuit court for further proceedings.
By the Court. -Order affirmed in part, reversed in part, and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The circuit court's decisions granting summary judgment dismissing the securities fraud claims against the added defendants and denying the investors' motion for leave to amend as to the racketeering and intentional misrepresentation claims against all defendants resolved all claims against the added defendants in the added defendants' favor, and, therefore, were final as to the added defendants. See Wis. Stat. § 808.03(1) ("A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties...."). The circuit court denied summary judgment dismissing the securities fraud claims against the three defendants named in the initial complaint, leaving those claims pending in the circuit court. That decision has not been appealed; nor are those three defendants respondents in this appeal.

The Gygi court analyzed the predecessor statute to Wis. Stat. § 551.509(10), which was then numbered Wis. Stat. § 551.59(5) (1981-82). Section 551.59(5) provided, in pertinent part, that "[n]o action shall be maintained under this section unless commenced before ... the expiration of one year after the discovery of the facts constituting the violation." 117 Wis. 2d at 465-66. The parties do not identify, and we do not discern, any difference in the triggering language between the statutory language analyzed in Gygi and the current statutory language.

We note that, although the triggering language for Wisconsin's 2-year securities fraud statute of limitations is identical to federal counterpart language, see 28 U.S.C. § 1658(b)(1), about twenty-five years after Gygi v. Guest , 117 Wis. 2d 464, 344 N.W.2d 214 (Ct. App. 1984), the United States Supreme Court rejected the inquiry notice standard and gave the federal language a substantially different interpretation. See Merck & Co. v. Reynolds , 559 U.S. 633, 651, 653 (2010) ("[T]he limitations period ... begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'-whichever comes first" and "irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.").

We briefly explain why we reject two additional arguments by the added defendants on this topic. First, the added defendants rely on Tregenza v. Great Am. Comm. Co. , 12 F.3d 717 (7th Cir. 1993) (ruling that plaintiffs were put on inquiry notice when the stock that they had been told a year earlier was greatly undervalued, would soon be worth twice as much, and, at worst, would not fall by more than 10 percent, had lost almost 90 percent of its value). However, that decision is not helpful for two reasons: (1) it is not binding on this court; (2) it is easily distinguished on at least the following basis. In Tregenza , the measure of the decline in the value of the investments at issue was clear: the share price of a publicly traded company's common stock from one year to the next. 12 F.3d at 719-20. Here, as discussed, we do not see evidence in the record defining the measure of the decline in the value of the investments at issue reported by the bank in the IRS Forms 5498.
Second, the added defendants argue that the investors admitted that the inquiry notice standard had been satisfied when they received the IRS Forms 5498 because they stated in their summary judgment briefing below that "the earliest date [the investors] could have suspected a problem was in after [sic ] 2013 when they received IRS Form 5498 showing an 80 [percent] drop in the value of their investment." We reject this argument for at least the reason that this could not reasonably be read as a dispositive concession. At most, this was an acknowledgment that one reasonable inference to be drawn from the IRS Forms 5498 is that the investors could have suspected potential fraud. But it is not a concession that this is the only reasonable inference to be drawn, and, indeed, the investors argued in the circuit court, and renew their arguments on appeal, that an inference to the contrary is also reasonable.