COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2337**

Cir. Ct. No.  **2018CV25**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

KEVIN A. MCLAIN,

   PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

PATRICK J. KEENAN,

   DEFENDANT-APPELLANT-CROSS-RESPONDENT,

V.

GLENN E. LORENZ P/K/A GLENN LORENZ AND CAROL J. LORENZ,

   THIRD-PARTY PLAINTIFFS-RESPONDENTS.

APPEAL AND CROSS-APPEAL from a judgment of the circuit court for Vernon County:  DARCY JO ROOD, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   This lawsuit arises out of the sale of land by Patrick Keenan to Kevin McLain and McLain's subsequent sale of that land to Glenn Lorenz and Carol Lorenz.[1]   McLain brought suit against Keenan for Keenan's tortious interference with McLain's contract to sell the land to Lorenz. Keenan asserted as an affirmative defense to McLain's cause of action that McLain agreed prior to the purchase of the land from Keenan that McLain would grant Keenan a right of first refusal over any future sale of the land by McLain, but that Keenan was not given an opportunity to exercise his purported right of first refusal to purchase the land from McLain.   Keenan also counterclaimed against McLain regarding his alleged right of first refusal.[2]

¶2      The Vernon County Circuit Court granted partial summary judgment to McLain on Keenan's counterclaim.   The circuit court later denied Keenan's motion to amend his pleadings to include new claims against McLain.   A trial to the court was held on McLain's tortious interference with a contract claim.   The circuit court determined that Keenan tortiously interfered with McLain's contract with Lorenz and granted a money judgment in favor of McLain.

¶3      Keenan makes four primary arguments on appeal.   First, Keenan argues that the circuit court erred in granting partial summary judgment to McLain

---

[1] For ease of reading, we will refer to Glenn Lorenz and Carol Lorenz collectively as "Lorenz."

[2] Keenan also filed a third-party complaint against Lorenz, and Lorenz filed a counterclaim against Keenan.   Keenan later stipulated to the dismissal of Lorenz from this action. Those claims are not at issue on appeal, and we do not discuss those further.

on Keenan's counterclaim. Second, Keenan argues that the circuit court erred in denying his request to amend his pleadings. Third, Keenan argues that the circuit court erred in determining that he tortiously inferred with McLain's contract with Lorenz. Fourth, Keenan argues that written findings of fact and conclusions of law entered by the circuit court were "untimely." McLain cross-appeals, arguing that the circuit court erred in not awarding to him his actual attorney fees incurred in this action. We reject Keenan's and McLain's arguments and affirm the rulings of the circuit court.

## BACKGROUND

¶4 There is no dispute regarding the following material facts.

¶5 In 2012, McLain made an offer to purchase "[a]pprox[imately] 112 acres more or less" belonging to Keenan in Viroqua, Wisconsin. A provision of McLain's offer, related to a parcel to be retained by Keenan, states: "The parties will cooperate in good faith to mark the corners of [an] excluded 5-6 acre parcel and shall share equally in the expense of the survey." McLain's offer to purchase also contained a provision for a right of first refusal that, under certain conditions described therein, would have allowed Keenan the opportunity to purchase the property from McLain if McLain later offered the land for sale. Keenan made a counteroffer which, material to this lawsuit, contained provisions that accepted McLain's offer regarding the excluded five- to six-acre parcel and called for a right of first refusal somewhat different than the provisions in McLain's offer to purchase. McLain accepted Keenan's counteroffer.

¶6      Prior to closing, a survey of the land that was the subject of the sale was prepared to delineate the contours of the Keenan property excluded from the sale.[3]

¶7      The closing for the sale of the McLain property occurred in 2012. Keenan attended the closing with his attorney, and McLain attended the closing. At the closing, Keenan conveyed the McLain property by warranty deed, and the warranty deed and the commitment for title insurance incorporated the legal description of the Keenan property as delineated by the survey. Keenan's attorney had previously been informed that the survey description of the Keenan property would be incorporated in the title commitment and warranty deed. Keenan's attorney prepared for the closing a document entitled "Right of First Refusal to Purchase Real Estate." (Some capitalization omitted.) McLain's attorney advised McLain prior to the closing not to sign the right of first refusal prepared by Keenan's attorney because the instrument was not consistent with the terms of the accepted counteroffer and was "self-contradictory and ambiguous." (Capitalization omitted.) Neither McLain nor Keenan signed any right of first refusal for the McLain property at or after the closing.

¶8      In 2017, McLain entered into an agreement to sell the McLain property to Lorenz. Before that sale closed, Keenan contacted McLain's realtor and expressed concern regarding the boundary line between the Keenan property and the McLain property. More specifically, Keenan told the realtor that the property he believed that he retained as part of the 2012 sale to McLain was larger

---

[3] For ease of reference, we generally refer to the parcel purchased by McLain as the "McLain property" and the parcel retained by Keenan as the "Keenan property."

than the parcel described in the 2012 warranty deed Keenan signed. Keenan's concerns, as expressed to the realtor, were communicated to Lorenz.

¶9 As a result of Keenan's assertions regarding the boundary line of the Keenan property, the following happened. The closing of the sale between McLain and Lorenz was delayed for thirty days, the sale price for the McLain property was reduced by $1500, McLain had a survey conducted of the property described in the 2012 warranty deed at a cost of $200, and McLain installed at his own expense "a livestock boundary fence" at or near the boundary between the McLain property and the Keenan property.

¶10 McLain sued Keenan for intentional interference with his contract with Lorenz to buy the McLain property and sought as damages additional expenses and losses related to the events just described. As an affirmative defense to that claim, Keenan asserted that McLain had failed to provide him with the following: notice of the sale of the McLain property to Lorenz; and a right of first refusal to purchase the McLain property. Keenan asserted in that affirmative defense that he had "a superior land interest to any third party," which gave him "privilege[] to notify the parties of his interest in the property." Keenan also filed a counterclaim against McLain seeking "an order of specific performance pursuant to the Right of First Refusal … to give [Keenan] the right to purchase the [McLain] property."[4]

---

[4] McLain filed this lawsuit in small claims court. The action was subsequently transferred to circuit court because Keenan sought damages in excess of $10,000 on his counterclaim against McLain. *See* WIS. STAT. § 799.02(1) (2019-20).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶11 McLain sent to Keenan requests for admission. One of the requests asked Keenan to admit that McLain did not sign a right of first refusal regarding the McLain property. Keenan did not respond to McLain's requests for admission within the thirty days specified in WIS. STAT. § 804.11(1)(b). Thereafter, McLain filed a motion in the circuit court for partial summary judgment seeking the court's determination that the right of first refusal asserted by Keenan was unenforceable because the parties never signed an instrument granting Keenan a right of first refusal to the McLain property. Prior to the hearing on the motion for partial summary judgment, Keenan filed a motion requesting an order enlarging the time for responding to the requests for admission, and Keenan filed with the court documents opposing McLain's request for partial summary judgment.

¶12 The circuit court denied Keenan's motion for an enlargement of time to respond to the requests for admission. The court also granted McLain's motion for partial summary judgment and determined that, based on both Keenan's failure to timely respond to the requests for admission and the undisputed facts in the record, there was no enforceable right of first refusal granted to Keenan by McLain to support Keenan's counterclaim.

¶13 Two days before the scheduled trial on McLain's tortious interference with a contract claim, Keenan filed a motion in the circuit court requesting leave to file amended pleadings, including an amended counterclaim in which Keenan sought to allege new claims against McLain, including a claim for breach of contract. The court denied Keenan's motion.

¶14 In October 2018, the case proceeded to a trial to the court on McLain's claim. The circuit court found that Keenan tortiously interfered with McLain's contract with Lorenz and that as a result of Keenan's tortious

interference: Lorenz "required … $1500 [be] paid" by McLain to Lorenz; McLain had the survey of the parcel redone at a cost of $200; and McLain incurred an interest loss on the sale proceeds in the amount of $594 based on the delay of the closing.

¶15    In May 2019, the circuit court entered an order stating that "[c]losing paperwork from 10/18/[18] [(the final date of the trial)] has not been timely submitted" and ordering that the "case is dismissed twenty days after the date of this Order unless good cause is shown within the twenty days why this order should not take effect." In response, the next day McLain submitted to the circuit court proposed findings of fact, conclusions of law, and a judgment. Keenan filed an objection to McLain's proposed findings of fact, conclusions of law, and judgment on the basis that the filings were "untimel[y]." The court signed McLain's proposed findings, conclusions, and judgment in June 2019.

¶16    McLain then filed a motion asking the circuit court to reconsider and amend its findings and conclusions, make additional findings and conclusions, and amend the judgment, including adding an amount to the judgment for the boundary fence that McLain installed. Keenan opposed McLain's motion on the basis that this motion was also untimely.

¶17    The circuit court entered an order amending its findings of fact and conclusions of law, and entered an amended judgment for Keenan's intentional interference with a contract in the amount of $4,771.93 and awarded McLain statutory costs. But, the circuit court did not award McLain his attorney fees incurred in this action as McLain requested. Keenan appeals and McLain cross-appeals.

¶18    We will mention other material facts in the following discussion.

## DISCUSSION

### I.  Keenan's Appeal.

¶19    Keenan makes four primary arguments on appeal.  Keenan contends that the circuit court erred in:  (1) granting partial summary judgment in favor of McLain; (2) not permitting Keenan to amend his counterclaim against McLain; (3) determining that Keenan tortiously interfered with McLain's contract with Lorenz; and (4) concluding that the written findings and conclusions entered by the court, and McLain's motion for reconsideration, were timely.  We discuss each of the alleged errors in turn.

### A.  Partial Summary Judgment in Favor of McLain on Keenan's Counterclaim.

¶20    Keenan asserts that the circuit court's grant of partial summary judgment in favor of McLain on Keenan's counterclaim was improper for two reasons:  (1) summary judgment was based on the deemed admissions that the court should have allowed Keenan to withdraw; and (2) McLain failed to comply with WIS. STAT. § 802.08(2) regarding service of his motion.  We begin by setting forth the principles that govern our analysis of the circuit court's grant of partial summary judgment in this appeal and our standard of review.

#### 1.  Governing Principles and Standard of Review.

¶21    Summary judgment is proper, and the moving party is entitled to judgment as a matter of law, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2); *see Bank of*

*N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. This court views summary judgment materials "in the light most favorable to the party opposing summary judgment." *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807. We review de novo a summary judgment determination of the circuit court. *Bank of N.Y. Mellon*, 381 Wis. 2d 218, ¶31.

¶22 WISCONSIN STAT. § 804.11(1)(b), which addresses requests for admissions, provides that "[e]ach matter of which an admission is requested ... is admitted unless, within 30 days after service of the request … the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter ...." Section 804.11(2) permits, but does not require, a circuit court to allow a litigant to withdraw admissions if the following two requirements are met: (1) the "presentation of the merits of the action will be subserved"[5]; and (2) the party who obtained the admission will not be prejudiced by the withdrawal. *See id.* Both factors must be satisfied for the withdrawal of admissions to be permitted. *Id.*

¶23 The decision to allow relief under WIS. STAT. § 804.11(2) from the effect of an admission is within the circuit court's discretion. *Luckett v. Bodner*, 2006 WI 68, ¶31, 318 Wis. 2d 423, 769 N.W.2d 504. We will uphold the circuit court's discretionary decision if the court examined the relevant facts, applied a proper standard of law, and, demonstrating a rationale process, reached a

---

[5] The definition of "subserve" is "to promote or assist." Oxford English Dictionary Online, https://www.oed.com/view/Entry/192983?redirectedFrom=subserve#eid (last visited May 17, 2021).

conclusion that a reasonable judge could reach. ***Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶24 We next consider additional facts pertinent to our analysis.

### 2. Additional Pertinent Facts.

¶25 By letter dated June 14, 2018, McLain mailed to Keenan his requests for admission. Material here, McLain requested that Keenan admit the following:

- "[T]he document attached to [Keenan's] counterclaim as … the alleged Right of First Refusal[] was not signed at or after the closing at which [McLain] purchased the property from [Keenan]."

- Keenan "provided [McLain] with a right of first refusal … prior to the closing to request [McLain] [] sign the Right of First Refusal."

- McLain "refused to sign the right of first refusal provided by [Keenan] prior to the closing."

- "[T]he closing went forward without the Right of First Refusal being signed."

¶26 On July 9, 2018, Keenan's then-attorney filed a motion with the circuit court to withdraw as Keenan's attorney in this action. The attorney stated as the basis for withdrawal that he had "made over 30 attempts to contact" Keenan, but that Keenan "has gotten back to counsel perhaps 5 times," and when Keenan "does respond or answer[], he promises to provide counsel with necessary documents to allow counsel to prosecute his case and defend [Keenan] from the claims of other parties but fails to deliver on those promises." The circuit court granted counsel's request to withdraw on July 23, 2018.

¶27    Keenan did not respond to McLain's requests for admission within the thirty days specified in WIS. STAT. § 804.11(1)(b).  McLain filed a motion in the circuit court requesting partial summary judgment, seeking a determination that the right of first refusal claimed by Keenan was never entered into by the parties and is, therefore, unenforceable.  The motion was based on what McLain submitted should be deemed admissions by Keenan to the requests from McLain.  A hearing on McLain's motion for partial summary judgment was scheduled by the circuit court.

¶28    Four days before the hearing on McLain's motion for partial summary judgment, Keenan (then again represented by counsel) filed a motion in the circuit court requesting an order "[e]nlarging the time for responding to [McLain's] Request for Admissions … and/or for an order for withdrawal of any requests otherwise deemed admitted due to the failure to respond within 30 days."[6]  Keenan also filed with the court documents opposing McLain's motion for partial summary judgment.  In his submission opposing summary judgment, Keenan did not offer any evidence that the parties executed an enforceable right of first refusal in Keenan's favor.

¶29    Shortly before the hearing, and in support of his motion for partial summary judgment, McLain submitted his own affidavit in which he averred that a "RIGHT OF FIRST REFUSAL TO PURCHASE REAL ESTATE" was

---

[6] Keenan did not dispute in the circuit court that McLain's requests for admission were properly deemed admitted under WIS. STAT. § 804.11(1)(b) and, instead, Keenan asked that the circuit court allow him to withdraw the admissions and enlarge the time for Keenan to respond to the requests.

"provided to [McLain] by [Keenan]" prior to the closing on the McLain property. However, McLain "did not sign [that document] either before or after Closing."

¶30 A hearing was held on Keenan's motion for enlargement of time to respond to McLain's requests for admission at the same time as McLain's motion for partial summary judgment. The circuit court denied Keenan's motion.

¶31 In explaining its ruling, the court considered whether the presentation of the merits of this action will be "subserved" by allowing Keenan to withdraw his admissions:

> [W]as a right of first refusal signed at the closing[?] [I]t's really as a matter of law the unenforceability of these, not so much based on the request for admissions.

The court also noted:

> [B]ut as a matter of law I find there is no right of first refusal that's enforceable because there was nothing executed at the [closing].
>
> Mr. Keenan has had six years to try to resolve this, and he has not done so, indicating to me he's accepted this and that he agreed to go forward at [closing] without a right of first refusal.

### 3. Analysis.

¶32 To repeat, in his counterclaim against McLain, Keenan sought an order for specific performance alleging that he had a valid right of first refusal. McLain requested partial summary judgment on Keenan's counterclaim on the basis that Keenan never had an enforceable right of first refusal with regard to the McLain property. In briefing in this court, McLain again asserts that McLain never gave an enforceable right of first refusal to Keenan for the McLain property. Keenan does not dispute McLain's assertion in his reply brief filed in this court.

In fact, Keenan argues to us that, although "McLain contractually bound himself" to execute a right of first refusal in Keenan's favor, McLain "fail[ed] to provide a signed right of first refusal." (Emphasis omitted.) Accordingly, Keenan has conceded this point. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted).

¶33 When an essential element of a claim cannot be proved under any view of the evidence, the claim fails. *See Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31 (Ct. App. 1997). Here, an essential element of Keenan's counterclaim was the existence of a right of first refusal which Keenan could enforce. Absent the existence of that instrument, Keenan cannot establish that he has a right of first refusal for the McLain property. So, the circuit court was correct in concluding that the presentation of the merits of this action would not be "subserved" by allowing Keenan to withdraw his admissions. In other words, the undisputed facts show that Keenan never had a right of first refusal for the McLain property, and allowing Keenan to withdraw his admissions would not change that. Because Keenan cannot meet that test, his argument on withdrawal of his admissions fails.[7]

---

[7] Keenan also argues that the circuit court should have allowed him to withdraw the deemed admissions because, according to Keenan, McLain's counsel had agreed to extend the date by which Keenan needed to respond to McLain's requests for admissions, and because the parties entered into a stipulation after the requests for admission were served in which they agreed that the deadline for discovery previously set by the circuit court "shall be extended by 60 days." The court rejected those assertions and found that Keenan's failure to answer McLain's request for admission "was due to the action of [Keenan]." The circuit court further stated: "Well, I think it is compelling that Mr. Keenan did have counsel when the request for admissions were propounded. If counsel could not get them to Mr. Keenan, I believe that's Mr. Keenan's fault." The court also noted:

(continued)

13

¶34    For these reasons, the circuit court properly granted McLain's motion for partial summary judgment on Keenan's counterclaim.[8]

### 4.  Summary Judgment Motion Service.

¶35    In the alternative, Keenan argues that the circuit court erred in granting partial summary judgment because he was not timely served with McLain's motion for partial summary judgment.  We reject Keenan's argument for the following reasons.

¶36    WISCONSIN STAT. § 802.08(2) provides that "the motion [for summary judgment] shall be served at least 20 days before the time fixed for the hearing …."  Keenan argues that  McLain was required to serve the motion on him by postal mail under WIS. STAT. § 801.15(5)(a).[9]  Based on those statutes, Keenan asserts that McLain was required to place the motion in the mail to him no less

---

> [A]nd then he failed to communicate with counsel, for months, several months, according to the affidavit filed by counsel.  And this happened during the discovery period, when he should have gotten these requests for admissions.  He was incommunicado with his attorney to the extent where he finally had to withdraw his appearance.  Now, whose fault is that?  I think that's Mr. Keenan's fault for failing to communicate with his attorney.

The circuit court had a reasonable basis to reject the argument that McLain agreed to an extension to answer the requests for admission.  The letter between counsel did not mention that, and the affidavit from Keenan's former counsel does not clarify that such an extension was granted.  Without any express statement in the record otherwise, Keenan provides us with no reason to question the circuit court's determination that no such extension was granted.

[8] Because of our decision on this issue, we need not address Keenan's argument that McLain's affidavit filed in support of his motion for partial summary judgment was not timely. *See* **Cholvin v. DHFS**, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118.

[9] WISCONSIN STAT. § 801.15(5)(a) provides:  "If the notice or paper is served by mail, 3 days shall be added to the prescribed period."

than twenty-three days before the hearing on McLain's motion for partial summary judgment. It is undisputed that McLain placed the motion in the mail four calendar days later than Keenan argues the motion should have been mailed. We next provide context for the circuit court's decision to rule on McLain's motion for partial summary judgment regardless of the four-day difference of which Keenan now complains.

¶37    The summary judgment hearing was originally scheduled for August 20, 2018. By letter dated August 17, 2018, Keenan, at that time pro se, objected to the court hearing McLain's motion on August 20, 2018, because Keenan had "not receive[d] any notice of [the] hearing and only learned of it yesterday." At the August 20 hearing, McLain informed the court that he did "not have proof of timely service" of his motion for partial summary judgment on Keenan. The circuit court then rescheduled the summary judgment hearing and another pending motion: "I think that we should probably adjourn this to September 10 and do all the motions together. And we'll set aside an hour. It won't be a scheduling conference. It's going to be a motions hearing." As a result, the summary judgment hearing was rescheduled for twenty-one days later. Keenan did not object to the rescheduled hearing date.

¶38    In a motion filed on September 6, 2018, Keenan (again represented by counsel) sought a continuance of the summary judgment hearing on the basis that McLain failed to give sufficient notice to Keenan because of the four-day difference already described. The summary judgment hearing was not continued by the circuit court and was held, as scheduled, on September 10, 2018. Keenan objected at the hearing on the basis that service of McLain's motion was four days late, and McLain responded to those arguments before the court. At that hearing, Keenan did not identify for the court how his summary judgment factual

submissions or arguments would be different but for the purported untimeliness of service of McLain's motion. Keenan also did not describe for the court how a continuance of four days to rectify the alleged error would make any difference to the result of the motion hearing. The court decided McLain's motion for partial summary judgment at the September 10, 2018 hearing.

¶39    On appeal, Keenan relies on our supreme court's discussion in *Larry v. Harris*, 2008 WI 81, 311 Wis. 2d 326, 752 N.W.2d 279, in an attempt to support his argument that the circuit court erred in deciding the partial summary judgment motion over Keenan's objection to the timeliness of the motion. *See id.*, ¶¶39-40, 43. However, our supreme court's discussion in *Larry* concerned a *sua sponte* grant of summary judgment, with no notice to the parties, by a circuit court. *See id.*, ¶¶39-43. *Larry* did not, as Keenan contends, establish that a circuit court has no authority to grant summary judgment if there is any deviation from the requirement of twenty-day service of the motion prior to the hearing as set forth in WIS. STAT. § 802.08(2).

¶40    Moreover, assuming without deciding that the circuit court erred in not granting a four-day continuance before deciding McLain's motion for partial summary judgment (and we do not so conclude), any such error would have been harmless. WISCONSIN STAT. § 805.18(1) states: "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party." In addition, § 805.18(2) states in pertinent part:

> No judgment shall be reversed or set aside … in any action … for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error

16

> complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment ….

For an error to "affect the substantial rights" of a party, "there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding." *Evelyn C. R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768. "A reasonable possibility of a different outcome is a possibility sufficient to undermine confidence in the outcome." *Id.* If the error is not sufficient to undermine the reviewing court's confidence in the outcome, the error is harmless. *Id.*

¶41 Here, Keenan did not state in the circuit court, and does not argue on appeal, that the purported four-day discrepancy has harmed or prejudiced him in any way. Specifically, Keenan does not argue that he would have changed any of his summary judgment submissions or arguments, or that the result of McLain's motion would have changed, with a continuance of four days to rectify any purported discrepancy. Under these circumstances, a continuation of the summary judgment hearing for four days would not have changed the outcome of the circuit court's ruling on the motion for partial summary judgment, and any alleged error of the circuit court is harmless.

¶42 Accordingly, we affirm the circuit court's decision on McLain's motion for partial summary judgment.

## B. Motion for Leave to Amend.

¶43 Keenan challenges the circuit court's denial of his motion to amend his pleadings after partial summary judgment was granted in McLain's favor on Keenan's counterclaim. We begin by setting forth additional pertinent facts. We

17

then set forth the principles that govern our review of the circuit court's denial of Keenan's request.

### 1. Additional Pertinent Facts.

¶44 After the circuit court entered partial summary judgment dismissing Keenan's counterclaim with prejudice, and two days before the trial was scheduled to be held on McLain's tortious interference with a contract claim, Keenan filed a motion seeking permission to amend, a second time, his answer and counterclaim. More specifically, Keenan sought leave to:

- Add additional affirmative defenses to his answer, including a claim that McLain breached an agreement with Keenan to grant Keenan a right of first refusal for the McLain property.

- Add a counterclaim against McLain for breach of contract and civil conspiracy.

- Add a third-party complaint against Cynthia McLain (Kevin McLain's wife) for breach of contract.

- Add a third-party complaint against the closing agent for breach of fiduciary duty, negligence, and misrepresentation based on the events surrounding the 2012 McLain to Keenan sale.

- Add a third-party complaint against the estate of a surveyor for breach of contract and/or negligence relating to the 2012 survey of the parcel of land retained by Keenan.[10]

¶45　The circuit court denied Keenan's motion and stated as to one basis for its denial of Keenan's motion:

> So this is difficult because I think the breach of contract count is a significant possible issue.
>
> In **Carl [v.] Spickler [Enterprises, Ltd.]**, [165 Wis. 2d 611, 478 N.W.2d 48 (Ct. App. 1991),] the Court denied the motion [to amend] because … there would be significant delay because additional discovery would be required because there were very different allegations made.
>
> Here, if the only issue were [the] breach of contract [claim] … requested [in the] amendment, there wouldn't be a significant delay. But with the adding [of] third parties to it, really very different causes of action, some of which have little to do with the specific facts of this case, that would result in a significant delay in a case that's already been pending for a year.

¶46　The circuit court then discussed a separate basis to deny Keenan's motion:

> [I]n **Mach v[.] Allison**, [2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766,] … the entire case had been disposed of by summary judgment. That's [the situation] here. [Keenan's] whole counterclaim was disposed of…. [The court in **Mach**] … adopted the federal standard, creating a tougher standard for amendments after summary judgment ….
>
> And [**Mach**] relied on federal case law that focused on the importance of finality of judgments, which summary

---

[10] By the time Keenan sought his second amendment of his pleadings, the surveyor was deceased.

judgment is, and it said essentially that if a party puts forth one basis upon which to succeed and then they don't succeed on that basis, … it's a much tougher standard [than] to come back and [request amendment of the pleadings without having sought summary judgment] ….

… I am not going to permit the amendment because I believe that with those additional counts and third parties, I think that … expands this case far beyond where it should be at this stage of the proceeding. This should have been done before now if it were going to be done … when the parties were involved in discovery.

### 2. Governing Principles and Standard of Review.

¶47 At issue is the circuit court's discretion to deny Keenan leave to amend his pleadings. As properly noted by the court, when considering a party's request to amend pleadings after summary judgment has been granted, the court must consider the reason the requesting party has not acted sooner, the length of time since the filing of the original pleadings, the number and nature of prior amendments, the nature of the proposed amendment, and the effect on the adverse party. *See Mach*, 259 Wis. 2d 686, ¶27.

¶48 "Whether to allow an amendment to a complaint [or other pleading] when the party does not have a right to amend under WIS. STAT. § 802.09(1) is a matter within the discretion of the circuit court."[11] *Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶34, 298 Wis. 2d 468, 727 N.W.2d 546 (citing *Mach*, 259 Wis. 2d 686, ¶20) (footnote omitted). We will affirm the circuit court's discretionary decision if the court examined the relevant facts, applied a proper

---

[11] The standards in WIS. STAT. § 802.09(1) regarding amendments of pleadings do not apply in this circumstance because this was the second time Keenan requested to amend his answer and counterclaim, and the post-summary judgment standards enunciated in *Mach v. Allison*, 2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766, are controlling.

standard of law, and, demonstrating a rationale process, reached a conclusion that a reasonable judge could reach. *Loy*, 107 Wis. 2d at 414-15; *see **Butcher***, 298 Wis. 2d 468, ¶34.

### 3. Analysis.

¶49 Keenan makes four arguments in support of the position that the circuit court's denial of his motion to amend his pleadings a second time constituted an erroneous exercise of the court's discretion.

¶50 First, Keenan argues that it was unreasonable for the court to deny his request to amend his counterclaim because the breach of contract counterclaim he sought to add is a "significant possible issue," and because the addition of that particular claim would not have caused significant delay in the proceedings. However, Keenan's argument ignores the circuit court's second basis for denying his motion. The court determined that, because summary judgment had already been granted against him, Keenan faced a "tougher standard" under *Mach* for amending his pleadings. Keenan gives us no viable reason to overturn the circuit court's decision given: the length of time that had passed since the filing of Keenan's original pleadings in this action; the fact that there was already one amendment by Keenan to his original pleadings; Keenan requested the amendments two days before the trial was scheduled to start; and the need for finality of judgments. *See **Mach***, 259 Wis. 2d 686, ¶27.

¶51 Second, Keenan argues that the circuit court's decision to deny his motion was erroneous because the court failed to take into account "substantial newly-discovered evidence." But, Keenan makes no argument that the court's decision was not reasonable in light of the court's first basis for its ruling that

21

granting the motion would cause significant delay. As a result, we reject this argument.

¶52 Third, Keenan argues that the court erroneously dismissed on summary judgment his counterclaim to enforce the alleged first right of refusal. Keenan contends that, because partial summary judgment should not have been granted, he should not be burdened with the stronger showing for amending pleadings after summary judgment that was adopted in *Mach*. We determined, above, that partial summary judgment was properly granted against Keenan regarding the alleged right of first refusal and, accordingly, the court's application of the more burdensome *Mach* standard was proper.

¶53 Finally, relying on WIS. STAT. § 752.35,[12] Keenan argues that the circuit court's decision was in error because the court's failure to allow him to amend his pleadings prevented the real controversy from being tried. "In exercising discretionary reversal, the court of appeals must engage in 'an analysis setting forth the reasons' that the case may be characterized as exceptional." *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258 (quoting *State v. Kucharski*, 2015 WI 64, ¶42, 363 Wis. 2d 658, 866 N.W.2d 697). Keenan

---

[12] WISCONSIN STAT. § 752.35 states:

> **DISCRETIONARY REVERSAL.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

asserts that being able to litigate the issue of whether McLain breached a contract to provide a first right of refusal "presumably … would have had a major impact on the determination of whether Keenan did, or even could have, engaged in tortious inference with contract." However, as discussed, Keenan does not have an enforceable right of first refusal to exercise regarding the McLain property. Further, Keenan does not present an assertion that discretionary reversal is required, or that this appeal is "exceptional," other than through arguments we have already rejected.

¶54    In sum, the circuit court did not erroneously exercise its discretion in denying Keenan's motion to amend his pleadings, and we affirm the ruling of the circuit court.

### C.  Trial on Tortious Interference.

¶55    Keenan challenges the circuit court's determination that he tortiously interfered with the contract between McLain and Lorenz. We begin by setting forth principles that govern our review of this issue and our standard of review.

### 1.  Governing Principles and Standard of Review.

¶56    A claim for tortious interference with a contract has five elements:

> (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.

*Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI 128, ¶37 n.9, 297 Wis. 2d 606, 724 N.W.2d 879 (quoted source omitted); *Briesmeister v. Lehner*, 2006 WI App 140, ¶48, 295 Wis. 2d 429, 720 N.W.2d 531. On appeal, the

parties' dispute is solely directed at the third and fifth elements. A plaintiff (here, McLain) bears the burden of proving that a defendant's interference with a contract was intentional (the third element), and the defendant (here, Keenan) bears the burden to prove that his or her interference was justified or privileged (the fifth element). *See Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶38, 274 Wis. 2d 719, 685 N.W.2d 154; *see also* WIS JI—CIVIL 2780.

¶57    The circuit court's findings of fact will be affirmed unless the findings are clearly erroneous. WIS. STAT. § 805.17(2). A circuit court's factual findings are not clearly erroneous if those findings are supported by any credible evidence in the record, or any reasonable inferences from that evidence. *See Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998). Whether a set of facts satisfies the applicable legal standard is a question of law that we review de novo. *Estate of Payette v. Marx*, 2020 WI App 2, ¶18, 390 Wis. 2d 356, 938 N.W.2d 628.

## 2.  Analysis.

¶58    For context, we repeat material undisputed facts. After McLain agreed that he would sell his property to Lorenz, but before the closing, Keenan contacted McLain's realtor to express his concern that he retained as part of the 2012 sale more land than the parcel described in the 2012 warranty deed. Keenan's concerns were then relayed to Lorenz.

¶59    After Keenan contacted McLain's realtor, and as a result of Keenan's assertions regarding the boundary line of the Keenan property, the following happened. The closing of the sale between McLain and Lorenz was delayed for thirty days, the sale price of the McLain property was reduced by $1500,  McLain had a survey conducted of the property described in the 2012

warranty deed at a cost of $200, and McLain installed at his own expense "a livestock boundary fence" at or near the boundary between the McLain property and the Keenan property.

### a. Keenan's Interference Was Intentional.

¶60   To establish the third element, a plaintiff must prove that the defendant's "prime purpose was to interfere with the contractual relationship [the plaintiff] had with [the third party] or [the defendant] knew or should have known that such interference was substantially certain to occur as a result of the [defendant's] conduct." *Briesmeister*, 295 Wis. 2d 429, ¶49 (quoting WIS JI—CIVIL 2780) (emphasis omitted).

¶61   Keenan presents one argument that the circuit court erred in determining that McLain met his burden on the third element.  More particularly, Keenan asserts that his intent was "not … to interfere with the contract between McLain and [Lorenz], but merely … to address and rectify a boundary issue." But, Keenan's argument goes only to the first manner in which the third element may be proven.  In this case, the third element, regarding intent, is satisfied if Keenan should have known that interference of the contract between McLain and Lorenz was substantially certain to occur as a result of his conduct.  *See **id***. Indeed, McLain explicitly argues in regard to the third element that Keenan's actions "could result in nothing but interference with the contract between McLain and Lorenz."  Keenan makes no attempt to refute McLain's argument in his reply brief in this court, and we conclude that Keenan has conceded that point. ***Schlieper***, 188 Wis. 2d at 322 (stating a proposition asserted by a respondent on appeal and not disputed by the appellant's reply may be taken as admitted).  For

25

those reasons, McLain met his burden to prove the third element of tortious interference with a contract.

### b. *Keenan's Interference Was Not Justified.*

¶62    "To determine whether conduct is justified or privileged, the trier of fact must weigh all the circumstances." *Briesmeister*, 295 Wis. 2d 429, ¶51 (citing *Mackenzie v. Miller Brewing Co.*, 2000 WI App 48, ¶63, 234 Wis. 2d 1, 608 N.W.2d 331).  Several factors inform the fifth element, including "the nature, type, duration and timing of the conduct, whether the interference is driven by an improper motive or self-interest, and whether the conduct, even though intentional, was fair and reasonable under the circumstances." *Id.*

¶63    Keenan asserts that he established that his interference with McLain's contractual relationship with Lorenz was privileged or justified because he presented evidence that he was trying to protect what he believed was the rightful boundary of the property he retained in the 2012 sale.[13]  Keenan refers us to *Briesmeister*, in which this court stated that "[a] party has a right to protect what he [or she] believes to be his [or her] legal interest." *Id.*, ¶54.

¶64    At trial, Keenen testified to the following.  Prior to the sale of the McLain property to McLain, Keenan informed McLain that he was not selling that portion of his property containing his "buildings, basically [the] improvements that [he'd] done on the property" and "was only selling [the] farm ground outside of the building area."  Keenan believed that the "building area" he would retain in

---

[13] Keenan does not argue on appeal that his interference with the McLain-Lorenz contract was privileged or justified based on his alleged right of first refusal regarding the McLain property.

the 2012 sale to McLain was a "fenced-in area," within which were sheds, a trailer house, a main house, silage pits, and a septic system.[14] McLain's offer to purchase stated that the "parties will cooperate in good faith to mark the corners of the excluded 5-6 acre parcel," and Keenan testified that he understood this to mean that a survey of the Keenan parcel would be completed. It is undisputed that those survey documents prepared for the 2012 sale and incorporated in the warranty deed from Keenan to McLain describe a different boundary for the Keenan property than the particular parcel that Keenan testified at trial he thought he would retain.

¶65 At the conclusion of the trial, the circuit court made the following findings. Keenan knew as early as 2013 that "there was an issue" with the boundary line of the Keenan property, that Keenan discussed the issue with McLain, and that Keenan "talked with [Keenan's attorney] constantly," but took no action until he raised the issue with McLain's realtor. Keenan "did nothing to resolve [the] issues" and instead "just sat on it" until McLain entered into the contract to sell the McLain property to Lorenz. Keenan failed to present sufficient evidence to support his assertion that he reasonably believed that he was supposed to retain eight acres as part of the 2012 sale. The accepted offer to purchase indicated that Keenan was selling McLain 112 acres and that Keenan would retain "five to six acres." "[F]ive to six acres … usually doesn't mean plus or minus three or four [more] acres," and "[n]othing in [Keenan's] counteroffer said anything about approximately eight acres."

---

[14] There is no dispute that the septic system is situated outside the boundaries of the Keenan property.

¶66 All of these findings of fact are supported by evidence from the trial record and, as such, are not clearly erroneous. *See* WIS. STAT. § 805.17(2). Moreover, the court properly weighed the circumstances present. A court may, in determining whether a defendant has met his or her burden on the fifth element, weigh the "nature, type, duration and timing of the conduct" and whether the conduct "was fair and reasonable under the circumstances." *Briesmeister*, 295 Wis. 2d 429, ¶51. And that is what the court did in weighing Keenan's actions, the timing of his conduct, and whether that conduct was fair and reasonable. The court determined that Keenan's actions were untimely and unreasonable. For those reasons, the court did not err in determining that Keenan failed to prove that his interference with the McLain-Lorenz contract was privileged or justified.[15]

¶67 In sum, we affirm the circuit court's determinations regarding Keenan's tortious interference with the McLain-Lorenz contract.

## D. Entry of the Circuit Court's Findings and Conclusions, and McLain's Motion for Reconsideration, Were Timely.

¶68 Keenan challenges the timeliness of the circuit court's written findings and conclusions, McLain's motion for reconsideration, and the court's written amended findings and conclusions. We begin by setting forth the pertinent procedural history.

---

[15] Keenan also argues that the "reasoning" of the circuit court "demonstrate[d] that the Court failed to engage in a logical analysis or apply the appropriate legal standard." However, it is unclear from Keenan's briefing in this court which particular statements of the court he is referring to. Accordingly, we reject this argument as insufficiently developed. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to address conclusory assertions and undeveloped arguments).

## 1. Pertinent Procedural History.

¶69 The trial to the court on McLain's tortious interference claim concluded on October 18, 2018, and, at the conclusion of the hearing, the court stated its findings and conclusions on the record. No party was charged with submitting to the court proposed findings of fact and conclusions of law, or a proposed judgment, and the court did not enter written findings and conclusions or a written judgment at that time. In May 2019, the court entered an order in which the court stated that "[c]losing paperwork from [the October 2018 trial] has not been timely submitted" and ordered that the "case is dismissed twenty days after the date of [the] Order unless good cause is shown within the twenty days why [that] order should not take effect." The next day, McLain's counsel filed with the court proposed findings of fact, conclusions of law, and a judgment based on the court's October 18, 2018 findings and conclusions stated on the record. Keenan objected to McLain's proposed findings, conclusions, and judgment on the basis that those were "untimel[y]." The circuit court signed McLain's proposed findings, conclusions, and judgment over Keenan's objection, and that document was entered by the clerk of court on June 5, 2019.[16]

¶70 On June 25, 2019, McLain filed a motion for reconsideration pursuant to WIS. STAT. § 805.17(3). Specifically, McLain requested that the court make additional findings and conclusions of law to increase the damages awarded to McLain. Keenan objected based on the timeliness of McLain's request. The court entered amended findings of fact, conclusions of law, and an amended

---

[16] WISCONSIN STAT. § 806.06(1)(b) states: "A judgment is entered when it is filed in the office of the clerk of court."

judgment on October 22, 2019. The amended judgment increased the money judgment awarded to McLain from $2,294 to $4,771.93, primarily to account for McClain's installation of the border fence.

## 2. Analysis.

¶71 Keenan argues that the written findings of fact, conclusions of law, and judgment were untimely under WIS. STAT. § 805.17(2). Keenan also asserts that the allegedly untimely actions were "highly prejudicial" to him and that we must grant a new trial. Keenan's arguments fail for several reasons we now discuss.

¶72 WISCONSIN STAT. § 805.17(2) states in pertinent part:

> In all actions tried upon the facts without a jury … the court shall find the ultimate facts and state separately its conclusions of law thereon. *The court shall either* file its findings and conclusions prior to or concurrent with rendering judgment, *state them orally on the record following the close of evidence* or set them forth in an opinion or memorandum of decision filed by the court…. *The findings and conclusions* or memorandum of decision *shall be made as soon as practicable and in no event more than 60 days after the cause has been submitted in final form.*

(Emphasis added.) Whether a court acted within its statutory authority is a question of law this court reviews de novo. ***Teff v. Unity Health Plans Ins. Corp.***, 2003 WI App 115, ¶56, 265 Wis. 2d 703, 666 N.W.2d 38.

¶73 Keenan concedes in briefing on appeal that the circuit court satisfied the sixty-day time requirement specified in WIS. STAT. § 805.17(2) when the court made its findings and conclusions on the record at the close of the evidence. Nonetheless, Keenan argues that the court's written findings and conclusions and

the judgment were entered seven months after the court made its oral findings and conclusion, and that violated § 805.17(2) and entitles him to a new trial.

¶74 Keenan gives no citation to any authority to support his position that WIS. STAT. § 805.17(2) requires that *both* oral *and* written findings and conclusions must be made within sixty days of the close of evidence, and he does not identify any reason why § 805.17(2) should be so construed.[17] Moreover, § 805.17(2) does not specify that a circuit court's failure to comply with the sixty-day time period specified in that subsection entitles a party to a new trial. Keenan does not explain why the failure of the circuit court to comply with the time limits in § 805.17(2) entitles him to a new trial, and he does not cite to any authority to support his claim that it does. Further, Keenan does not attempt to describe how he was purportedly prejudiced by the timing of the acts he complains of. Accordingly, we reject Keenan's argument on the basis that it is not supported by any authority and is not sufficiently developed. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (stating this court may reject undeveloped arguments); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (regarding rejection of arguments unsupported by citation to authority).

¶75 Keenan also argues that McLain's motion for reconsideration was untimely. However, Keenan concedes that McLain's motion was filed within twenty days after entry of judgment as required by WIS. STAT. § 805.17(3). Keenan's argument is based solely on the proposition that, because the circuit

---

[17] Keenan does not make any separate discernable argument that the judgment must be entered within a certain time period.

court allegedly violated § 805.17(2) by entering the written findings of fact, conclusions of law and judgment more than sixty days after the trial concluded, McLain's motion for reconsideration must also be untimely.  We have already rejected Keenan's argument under § 805.17(2).  It then follows that Keenan's contention about the timeliness of McLain's motion for reconsideration also fails.

## II.  McLain's Cross-Appeal.

¶76     McLain argues that the circuit court erred by not awarding him his actual attorney fees incurred in this action.  We begin by setting forth the principles that govern our analysis and our standard of review.

### A.  Governing Principles and Standard of Review.

¶77     Under the American Rule, each party is generally responsible for his or her own attorney fees.  *Nationstar Mortg. LLC v. Stafsholt*, 2018 WI 21, ¶27, 380 Wis. 2d 284, 908 N.W.2d 784.  However, in *Stafsholt*, our supreme court determined that a circuit court may award a party their attorney fees "as part of an equitable remedy."  *Id.*, ¶3.  The authority to award attorney fees as an equitable remedy "is not unlimited."  *Id.*, ¶32.  Such an award is "appropriate only in exceptional cases and for dominating reasons of justice."  *Id.* (quoting *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167 (1939)).

¶78     Whether an award of attorney fees is an appropriate equitable remedy under the facts of a particular case is a discretionary decision for the circuit court.  *See id.*, ¶34.  We will uphold the circuit court's discretionary decision if the court examined the relevant facts, applied a proper standard of law, and, demonstrating a rational process, reached a conclusion a reasonable judge could reach.  *See Loy*, 107 Wis. 2d at 414-15; *see Stafsholt*, 380 Wis. 2d 284, ¶35.

## B. Additional Pertinent Facts.

¶79 Post-trial, McLain sought reconsideration of the circuit court's award of damages. As part of that request, McLain asked the circuit court to award to him his actual attorney fees "up to the small claims limit of $10,000" based on Keenan's conduct that supported McLain's tortious interference claim.

¶80 The court denied McLain's request and summarized its reasoning as follows:

> So Mr. Keenan had some right to litigate that matter, which is why I denied the attorney fees in the first place. Again, there are issues with his dragging his feet and his failure to cooperate which added attorney fees, but I don't find that exceptional.

## C. Analysis.

¶81 McLain asserts that Keenan's actions in this case are "similar" to the actions in *Stafsholt* which our supreme court determined were "exceptional" and justified an award of attorney fees. Specifically, McLain relies on the following allegations: Keenan filed a counterclaim against McLain "knowing no right of first refusal existed"; Keenan "knew the warranty deed he gave McLain actually conveyed the property the deed said it conveyed and he had no claim on land now owned by Mc[L]ain"; and Keenan "created a controversy when even a cursory look at the transaction from 2012 would have told him he had no claims." We reject McLain's argument because it ignores the circuit court's determination that Keenan "had some right to litigate" the issue of the right of first refusal. Further, the court found that Keenan's conduct that delayed the resolution of McLain's claim was not "exceptional" as required by *Stafsholt*. *See Stafsholt*, 380 Wis. 2d

33

284, ¶32. McLain gives us no viable reason to ignore those discretionary determinations of the circuit court.

¶82 In sum, McLain has failed to establish that the circuit court's denial of his request for an award of attorney's fees was an erroneous exercise of discretion, and accordingly we affirm the court's ruling.

## CONCLUSION

¶83 For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.